*In re* MARRIAGE OF TIMOTHY E. CLEARMAN, Petitioner-Appellant, and JILL E. CLEARMAN, Respondent-Appellee.

Third District    No. 80-685

Opinion filed June 30, 1981.

Robert R. Mensing, of Califf, Harper, Fox & Dailey, of Moline, for appellant.

H. Reed Doughty and Dorothea O'Dean, both of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Petitioner in this dissolution action, Timothy Clearman, appeals from the judgment of the circuit court, upon remandment from this court (*In re*

*Marriage of Clearman* (1980), 85 Ill. App. 3d 584, 407 N.E.2d 189), whereby the circuit court awarded respondent Jill Clearman virtually the entire assets of the parties, without debt obligations, and awarded Timothy Clearman scant assets and the debt obligations. A similar distribution was ordered previously in this case, which order and judgment were reversed and the cause remanded for reconsideration with directions for the court to make explicit findings of fact. (*In re Marriage of Clearman* (1980), 85 Ill. App. 3d 584, 407 N.E.2d 189.) Upon remandment, the court took additional evidence and then made substantially the same distribution as it had before.

The trial court also made specific findings of fact and expressly stated the basis for its decision. On this second appeal from that order and judgment, Timothy Clearman argues: (1) that the division of marital property by the court was inequitable and not in just proportions; (2) that the court erred in characterizing the jointly owned marital residence and certain other assets as nonmarital property; (3) that the award of child support was excessive; (4) that the court abused its discretion in awarding respondent attorneys' fees and costs; and (5) that the court erred in reserving the issues of maintenance and medical bill payments. In our prior opinion it was not necessary to fully set forth the pertinent factual background of the parties' marriage. It is necessary in this opinion to do so.

The record reveals that the parties were married on June 12, 1968. Neither brought substantial assets to the marriage, although Jill Clearman had $2,500 in cash and a new Volkswagen. During the first three years of the marriage, Timothy Clearman was in the United States Air Force. Jill Clearman during that time worked at a variety of jobs, mostly secretarial. The couple was unable to save any of their earnings during this period. From the outset of the marriage, the parties commingled their resources in a joint savings account. In 1971, after having been honorably discharged from the Air Force, Timothy Clearman began attending college. During his college attendance, he received both State and veteran's scholarships, aid through the G.I. Bill, and income from part-time work during the year and full-time work during the summers. Jill Clearman, to provide the basic support for the couple, also began work, with Deere & Company as a full-time secretary.

She worked there full time until two weeks before the couple's first child was born in July 1972, and she returned to work shortly thereafter to provide support for the family. In February 1975, while Timothy continued his education, the parties purchased, in joint tenancy, the marital residence which is subject to distribution in this dissolution action. They paid $30,500 for the home, with a downpayment of $8,000 coming from

their joint savings account. $3,000 of this was largely her savings and $5,000 from a gift to the couple by her parents, which money had been intended for Jill Clearman's college education. Monthly payments on the mortgage were paid from a joint account, which, until March 1976, consisted largely of Jill Clearman's earnings. They also purchased $2,500 worth of stock, taking it in joint title ownership. Evidence indicated that the $2,500 brought by Jill Clearman to the marriage was also invested in stock, which stock was subsequently sold.

In 1976, upon graduation, Timothy Clearman began employment with John Deere & Company, a position Jill Clearman had aided him in acquiring. She continued her employment until several months before their second child was born in May 1977. She took a leave of absence for the birth and later terminated her employment with Deere. She later returned to part-time work, with United Personnel, after the second child had been born. He continued employment with John Deere.

The parties owned three automobiles at the time of the dissolution, a '62 Falcon, given to Jill Clearman by her parents, a '76 Cutlass, and a '78 Trans Am Firebird. The marital home contained household goods and furnishings, valued at $3,000-$4,000. Both parties participated in the home and house activities, with Jill Clearman's contribution consisting of her chores as mother and wife, as well as some maintenance including painting and wallpapering. Mr. Clearman did the necessary maintenance and improvements on the home.

At the time of the original award in this case, both parties were 30 years old and in good health. Both were capable of supporting themselves through employment. Thereafter, however, and prior to rehearing by the circuit court upon remandment, Jill Clearman encountered tragic and serious health problems. Evidence at the hearing on remandment indicated that she was operated on in October 1979 for a brain abscess. As a result of the operation, her vision has been seriously impaired. She has had a severe narrowing of the visual field in both eyes, which results in her being able to see only straight ahead. The prognosis for future improvement is not good. Also, since the operation she has had other health difficulties, including an unexplained large weight gain and a lack of menstruation. As the trial judge indicated in his written opinion:

> "Within 30 days [of the initial judgment] she was hospitalized and had brain surgery, with such tragic results that the healthy person who testified in June and July 1979 was hardly recognizable as the same person in October, 1980. Apparently her speech and thinking processes have been impaired, and she sustained a change of personality and almost a complete loss of vision."

As a consequence of her health problems, she cannot drive a car, read a book, or competently handle many routine everyday tasks. She is able to

do light housework and she cooks meals for herself and the children. She now receives a monthly social security disability check for herself and the children. Her other assets, acquired after the divorce, consisted of about $1,200, mostly from gifts by friends during her illness. Medicaid paid for her medical expenses, and she has none outstanding now, although it is uncertain how long Medicaid will continue to provide for those expenses. She has the usual monthly expenses for the maintenance of herself and her children, totaling approximately $900. She is unable to save anything from her disability payments in meeting her monthly expenses.

Timothy Clearman has continued his employment with Deere & Company, earning $27,300 annually. He testified that his monthly expenses are $1,600 and that his salary does not serve to meet those expenses.

Dissolution of the marriage had been previously ordered on Jill Clearman's cross-petition, the court finding that Timothy Clearman had been guilty of extreme and repeated cruelty without cause or provocation and that such action had endangered her life and health. No issue with respect to the dissolution was raised in either appeal. Upon remandment, the trial court, based upon the facts as set forth previously, entered a judgment with respect to property distribution, support and maintenance. The court awarded the marital home, including furnishings, to Jill Clearman. Petitioner Timothy Clearman was ordered to make the mortgage payments, with the unpaid balance at the time of rehearing totaling $19,678, to be paid in monthly installments of $160. She was awarded the '62 Falcon and the '76 Cutlass, while he was awarded the '78 Trans Am. She was given custody of the children and he was ordered to pay support in the amount of $50 weekly for each child. He was also ordered to maintain hospital and medical insurance for the two children and to pay dental, medical and hospital payments for them which were not covered by insurance. He was also ordered to maintain life insurance on his life, with the children as beneficiaries, until support and expense payments to them are terminated. She was awarded 100 shares of Shappell stock (valued at $4,000), half of all other stock acquired during the marriage, and the balance of the joint savings account. He was ordered to pay the tuition loan and the charge accounts of the parties. Questions of maintenance and payment of her medical bills were reserved by the court, based upon the uncertainty of continued help to her from Medicaid and Social Security. The court also awarded her attorneys fees and costs in the amount of $2,272.30. From the court's order and judgment, entered after remandment by this court, Timothy Clearman now appeals.

In our last opinion in this case we stated the relevant scope of review on appeal:

"In determining whether the totality of the evidence supports the disparate division of marital property, we are reminded that

this matter is within the discretion of the trial court and will not be disturbed on review absent an abuse of that discretion. [Citation.] Nevertheless, where a substantial injustice would result, the perimeters of the trial court's discretion are exceeded. [Citation.] The goal of the trial court should always be a distribution which is equitable in nature." (85 Ill. App. 3d 584, 587.)

In our previous opinion we felt that the extreme disparity in the division of marital property, as set forth in the trial court's original judgment, was not justified on the facts then in the record. We stated:

"Such a vast disparity in the proportionate disposition of marital property must be accompanied by the most extraordinary circumstances before this court can uphold it as just. All marital property can be awarded to one spouse only where the totality of the evidence supports that result." (85 Ill. App. 3d 584, 587.)

Previously in this case, we determined that the assets of the parties ought to be more justly proportioned, given the relatively equal positions of the parties. In support of that conclusion we stated:

"* * * no party has demonstrated grossly disproportionate need. Neither party has demonstrated in terms of age, health, skills or otherwise that a severe handicap exists relative to future economic opportunities, although it is clear their opportunities are not precisely equal. The statute does not treat a just proportion as synonymous with an equal proportion [citation], and the facts of the case *sub judice* do not warrant an equal apportionment; but also absent here are those extraordinary circumstances that create such a substantial imbalance in the equities as to deny one party any proportion at all. Absent such circumstances, we conclude that an injustice would occur unless the circuit court reconsiders the disposition of marital property previously ordered." (85 Ill. App. 3d 584, 588.)

We also directed, in that opinion, that reconsideration be made of the issues of child support and attorneys fees within the overall assessment of the parties' positions.

It is obvious in this cause that the critical factor in the trial court's decision as to distribution, upon remandment, was the extreme change in the health and employment capabilities of Jill Clearman. It was this additional extraordinary factor, coupled with the uneven contribution of the parties to the acquisition of assets during the marriage, that formed the basis for the court's award of substantially all of the assets to Jill Clearman. In discussing the distribution of the real property, furnishings, savings and autos, the court indicated that it considered the statutorily mandated factors, as found in section 503 of the Illinois Marriage and

Dissolution of Marriage Act. (Ill. Rev. Stat. 1977, ch. 40, par. 503.) The trial court's written opinion in this case states:

"The above express findings [that an equitable and just distribution required that all of the assets be awarded respondent] are found by reason of consideration of all relevant factors including the following, viz: (1) her major contribution in the acquisition of the property, including her contribution as a homemaker; (2) the value of the Trans-Am set apart to him as his non-marital property; (3) the marriage endured about 10 years and produced two children; (4) his ability to earn $27,300 a year, her total inability to earn anything on account of her condition of health, including the desirability of awarding the family home to a good mother having custody of the two children; (factors 5 and 6 are not applicable—no prior marriage and no antenuptial agreement); (7) he and she are about 31 years of age; he is in good health, she is in poor health; he is of the '78 Pontiac Firebird Trans-Am station in life, she is of the '62 Falcon station; he is an industrial engineer employed by Deere and Company, one of the nation's industrial giants; she has no paying occupation, no source of income (other than Social Security), no vocational skill or employability or estate, and the prospects that she ever will have any are none; (8) custody of the children was awarded to the Mother on account of her unique and unusual concern that 'her first responsibility is to her children;' (9) the apportionment of the residence to her in 1979 together with his payment of debts at Petersons, Sears, Penneys and his tuition loan was in lieu of maintenance, but on account of her deplorable condition of health and her total inability to earn anything, the matter of maintenance must be reserved pending continuance of Social Security payments to her for her benefit and the sufficiency thereof for her needs; and (10) his exceptional opportunity for future acquisition of capital assets and income and her total lack thereof."

In re-affirming an award of $50 support weekly for each child, based upon the financial position of the parties and the needs of the children, the court also indicated, with supporting evidence, its view of the petitioner's credibility:

"An example of Clearman's reliability and veracity appears at paragraph 4 of his affidavit filed Oct. 22, 1980, where he states 'My ex-wife and I have been separated 2 years during which I have paid approximately $14,000.00 to my ex-wife for support of my two children *and herself*.' On Jan. 3, 1979, Judge O'Shea ordered him to pay as child support $25 per week per child commencing

Jan. 5. This order continued in effect until Sept. 26th when the amount of child support was doubled. On Oct. 22, 1980 he was $2,400 in arrears according to Child Support records. In fact he has never paid a dime for support of his wife since he left her on November 26, 1978. From Jan. 5 to Sept. 21, 1979, is 38 weeks at $50 equals $1900.00, and thereafter until Oct. 22, 1980 is 56 weeks at $100 equals $5600 or a total of $7500. After deducting his arrearage of $2400 it appears that he paid only $5,100 for child support and nothing for his ex-wife, instead of $14,000."

As to the award of attorneys fees, that too was premised upon the relative financial positions of the parties, both at the time of the rehearing and looking to the future.

Based upon a consideration of the full factual background of the parties and their positions, the trial court substantially reaffirmed the prior judgment awarding assets to Jill Clearman and debts, along with personal effects and the Trans Am, to Timothy Clearman. We find that the judgment and order of the court as to distribution, taking into consideration the supplemented record, was justified, and we find no abuse of discretion in the distribution of marital property therein ordered.

■■ The petitioner argues that the court abused its discretion in making disparate distribution of their marital property. As indicated above, we disagree. The court fully considered and stated the factors and its findings with respect to the distribution. Given the disproportionate contributions of the parties to acquisition of the marital assets, favoring Jill Clearman, and more importantly, the extraordinary circumstance intervening after our first opinion, to-wit, her unfortunate and tragic deterioration in health, with coinciding reduction in employment possibilities, we find no abuse of discretion in the court's equitable and just division of the couple's assets. Other cases have also upheld such a distribution as just and equitable where extraordinary circumstances have existed. *In re Marriage of Cihak* (1981), 92 Ill. App. 3d 1123, 416 N.E.2d 701; *In re Marriage of Woodward* (1980), 83 Ill. App. 3d 253, 404 N.E.2d 575; *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065.

■■ Petitioner next argues that the trial court's characterization of the marital home and certain other assets as nonmarital was not proper and justified. While we agree that the respondent did not adequately rebut the presumption that property (herein the home, certain securities and bank accounts) acquired during the marriage is marital property (see *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 422 N.E.2d 635), nevertheless the trial court concluded in its written opinion in this case that even if those assets were considered marital assets, a just and equitable distribution in the case was to award them to Jill Clearman, given the circumstances of the parties. Based thereon, and not upon the erroneous finding that the assets were nonmarital property, we affirm the judgment.

■■ ■ Neither do we find basis to reverse the court's award of child support in the amount of $50 weekly for each child. Given the facts and circumstances as established in the record, we find that award was not excessive and we do not disturb it. On a similar basis we find no abuse of discretion in the award of attorneys fees and costs to Jill Clearman.

■■ Finally, the petitioner objects to the court's judgment insofar as it reserves the issues of maintenance and payment of the further medical bills. The basis for the reservation of those issues, pending further hearing, was the health of the respondent and the uncertainty of her receiving continued disability payments and Medicaid. Respondent argues that the evidence did not show that maintenance was allowable under the guidelines set forth in section 504(a) of the Act, in that she is now receiving support by way of disability payments. That is true, and an award of maintenance at this time would be unwarranted on the facts. However, because of her circumstances, she may be able to meet those guidelines in the future and be in need of maintenance. Considering the unusual and extraordinary circumstances of her condition, both physical and financial, the court did not err in reserving judgment on those questions.

For the reasons stated, the judgment of the Circuit Court of Rock Island County is affirmed in its entirety.

Affirmed.

SCOTT, P. J., and STOUDER, J., concur.