*In re* MARRIAGE OF JEAN R. FUGGITI, Petitioner-Appellee, and RICHARD J. FUGGITI, Respondent-Appellant.

First District (1st Division)   No. 83—1910

Opinion filed January 14, 1985.

John E. Cunningham, of Chicago, for appellant.

Kirsh & Berman, Ltd., of Chicago (Alan D. Hoffenberg, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is the second appeal concerning the disposition of property in the dissolution action between these two parties. In the initial distribution of marital property, petitioner Jean Fuggiti was awarded a larger portion of the marital property than was awarded to respondent Richard Fuggiti. This disposition was reversed and remanded in a Rule 23 order with instructions "for determination of appropriate allocation of marital property in conjunction with the possibility of an award of maintenance to respondent." At the second hearing, new evidence was introduced which showed that Jean Fuggiti suffered from a terminal illness. Based on the changed circumstances, the trial court made substantially the same distribution as it had before. Respondent now appeals. During the pendency of these proceedings, Jean Fuggiti

died and a special administrator was appointed to represent her estate.

On this second appeal, Richard Fuggiti contends (1) that the trial court failed to follow the appellate court's remanding instructions and (2) that the division of marital property was inequitable and not in "just proportions" as required by the Illinois Marriage and Dissolution Act (the Act) (Ill. Rev. Stat. 1981, ch. 40, par. 503(c)).

The record reveals that the parties were married on April 7, 1945. Neither party brought substantial assets to the marriage. Three children were born to the couple, each of whom is now emancipated. Jean Fuggiti was employed all but 12 years of the 36-year marriage. During those 12 years, Jean cared for the children and performed the services of a housewife at the family's home located in Arlington Heights.

During the first few years of marriage, Richard Fuggiti was in the United States Marine Corps. He was eventually discharged and given a 20% disability pension for injuries sustained in Korea. Richard then started his own business manufacturing plastic three-dimensional advertising displays. The business continued in operation until 1968, when it was destroyed in the riots which occurred upon the death of Martin Luther King, Jr. The only remaining assets of the business are two vacant lots located on Larabee Street in Chicago. Subsequently, Richard held various jobs dealing with fiberglassing, and after 1971 he was employed by companies located outside the Chicagoland area. While employed in Indiana, Richard was injured on the job and received a $9,362 workmen's compensation award. From 1971 to 1978, while living apart, he contributed to the family's income and returned home on weekends periodically. Jean Fuggiti filed a petition for dissolution of the marriage on July 17, 1979.

At the initial trial, the grounds for dissolution were uncontested, and a judgment dissolving the marriage was entered on August 17, 1981. The trial court valued the marital property and divided it as follows: The petitioner, Jean Fuggiti, was awarded the marital residence, which was valued at $90,000, subject to an $11,000 outstanding mortgage and a $6,000 debt owed to the petitioner's mother. The respondent, Richard Fuggiti, was awarded a $25,000 interest-free lien on the marital residence that was payable within 10 years and if upon sale of the house the net proceeds exceeded $90,000, he was to receive 34% of the excess.

Jean Fuggiti received home furnishings valued at $2,000. She was also awarded her profit-sharing fund, which at that time had a present value of $25,838; American Telephone and Telegraph stock

worth $16,000, which she had purchased during the marriage under an employee stock purchase plan. A 1974 automobile valued at $500 was also awarded to her.

In addition to his lien on the marital residence, Richard was also awarded his IRA account, his workmen's compensation award in the amount of $9,362, $500 worth of Seal Power stock, and a 1977 automobile valued at $1,000.

The parties were each awarded a half-interest in the vacant lots located on Larabee Street to be held in tenancy in common.

At the time of the original award in this case, Richard Fuggiti was unemployed, although he was studying and attempting to sell real estate and had some expertise in plastics and fiberglass. Jean was employed on a full-time basis as a receptionist for the Sealy Mattress company. The parties were apparently in good health and both were capable of supporting themselves through employment.

Upon appeal by Richard Fuggiti, the court in a Rule 23 order reversed the judgment of the trial court, finding that the award was not in "just proportions." The court noted that Jean Fuggiti had as great, if not greater, opportunity for future income, as did Richard, and that she was employed and apparently in good physical health, while he was unemployed and suffering from physical impairment. The cause was remanded for determination of appropriate reallocation of the marital property in conjunction with the possibility of an award of maintenance to respondent. The court also stated that "[h]owever, upon remand, the trial court may divide the property in equitable and fair proportions which might eliminate the need for maintenance."

Upon remandment, the trial court heard additional evidence and found that a substantial change in circumstances had occurred since the filing of the appellate court's opinion on September 13, 1982. Evidence at the hearing on remand indicated that Jean Fuggiti had been diagnosed as having a severe form of lung cancer and that her estimated time of survival was about one year. She was unable to work due to the widespread nature of her illness and the side effects of the chemotherapy she was receiving. Her sole source of income was disability benefits in the amount of $758 per month.

The trial court also found that the respondent had become a self-employed records searcher and a *part-time real estate salesman* who had earned $10,000 in 1982 and between $1,000 and $2,000 in the first two months of 1983. He was also receiving $54 per month in government disability benefits. His average monthly expenses were $400 to $500.

No issue with respect to the dissolution was raised, and the par-

ties stipulated to the use of the same property values as found by the appellate court. Based on the supplemented record, the trial court entered a judgment with respect to the property distribution which essentially reaffirmed the previous distribution with one exception. Instead of awarding the marital residence to the petitioner subject to the respondent's $25,000 interest-free lien payable within 10 years, the trial court ordered the sale of the marital residence after 18 months or the death or remarriage of the petitioner, whichever occurred first. The net proceeds of the sale were to be divided as follows: (a) to the petitioner's mother, $6,000 in payment of a loan, (b) to Jean, an amount equal to the amount by which the principal balance of the mortgage had been reduced from August 17, 1981 (the date of dissolution), to the date of sale, (c) the remaining balance to be divided 60% to Jean and 40% to Richard. The court denied maintenance as to Richard because his income was sufficient to meet his needs, and reserved maintenance as to Jean because her future was uncertain.

Respondent contends that the trial court failed to properly follow the remanding order of the appellate court. He argues that the trial court should have "followed" the order by dividing the marital property equally and should not have heard new evidence. We do not agree.

■■ ■ Where the remanding instructions of the appellate court are general in nature, the trial court upon remand is required to examine the appellate court's opinion and determine what further proceedings would be consistent with the opinion, and, in this regard, it may hear new evidence and make an appropriate disposition of the case. (*David v. Russo* (1983), 119 Ill. App. 3d 290, 295-96, 456 N.E.2d 342; *In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 403 N.E.2d 730.) In the present case, the appellate court's use of terms such as "appropriate allocation," "possibility of an award of maintenance" and "may divide the property in equitable and fair proportions" demonstrates that the Rule 23 order was general in nature so as to fall within the above-stated rule. See *In re Marriage of Clearman* (1980), 85 Ill. App. 3d 584, 407 N.E.2d 189, *appeal after remand* (1981), 97 Ill. App. 3d 641, 423 N.E.2d 283, *appeal denied* (1981), 85 Ill. 2d 564.

In *Clearman*, the trial court awarded the wife substantially all of the marital property. The appellate court reversed this disposition and determined that the assets of the parties ought to be more justly apportioned given the relatively equal positions of the parties. (85 Ill. App. 3d 584.) The cause was remanded to allow the trial court to re-

consider the disposition of marital property previously ordered. Upon remand, the court took additional evidence and found that, in the interim, the wife had become seriously ill and suffered serious physical impairment. The trial court then entered virtually the same disposition of property. The appellate court affirmed the actions of the trial court and upheld the disposition because of the extraordinary circumstances which had arisen after the remanding order. *In re Marriage of Clearman* (1981), 97 Ill. App. 3d 641.

As in *Clearman*, the trial court in the present case, upon remandment, heard additional evidence and made its distribution based on the extraordinary circumstances which had arisen after the appellate court had filed its Rule 23 order. We find that the actions of the trial court on remand were proper because the court could not have made an equitable disposition of marital property or determined the need for maintenance without considering the current health and economic circumstances of the parties.

■■ The respondent also argues that the trial court abused its discretion in making a disparate disposition of the marital property that was not in "just proportions" as required by section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 503(c)). We disagree.

An equal division of marital property is not required by section 503 of the Act, only a disposition that is just and equitable. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238.) The trial court's division of property will be reversed only where "no reasonable man would take the view adopted by the trial court." (*In re Marriage of Pancner* (1982), 111 Ill. App. 3d 546, 550, 444 N.E.2d 653, *appeal denied* (1983), 94 Ill. 2d 553.) Further, the trial court must consider all relevant factors before exercising its discretion in disposing of the marital property but need not make specific findings as to each of the ten factors set forth in section 503(c) of the Act. (*In re Marriage of Walsh* (1982), 109 Ill. App. 3d 171, 440 N.E.2d 310; *In re Marriage of Lipsch* (1980), 86 Ill. App. 3d 81, 407 N.E.2d 1028.) We believe the trial court satisfied the requirement of section 503(c).

The record discloses that the trial court considered the contribution of the parties; the value of the parties' resources; the disparity of the parties' earning potentials subsequent to dissolution; the relevant economic circumstances including the health and employability of each of the parties; and the fact that the distribution was in lieu of maintenance. Although the court did not list these factors serially, with a separate finding for each, the record indicates facts noted by the court which show that the court considered all relevant factors.

It is obvious in this cause that the critical factor in the trial court's decision as to distribution, upon remandment, was the extreme change in the health and employment capabilities of Jean Fuggiti. This additional extraordinary factor, coupled with the fact that Richard Fuggiti had become self-employed, formed the basis for the court's award of a substantial portion of the marital assets to Jean Fuggiti and the denial of maintenance to Richard. We find no abuse of discretion in the court's division of the parties' marital property and its refusal to award maintenance to respondent. We affirm.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.