In re the MARRIAGE OF: Judith A. WELLS, Petitioner,

and

Curtis W. Wells, Respondent.

No. 92SC113.

Supreme Court of Colorado,
En Banc.

April 12, 1993.

Bonnie M.J. Schriner, Denver, for petitioner.

Lichtenfels, Pansing & Miller, P.C., J. Reid Lichtenfels, Susan H. Borgos, Denver, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *In re Marriage of Wells*, 833 P.2d 797 (Colo.App. 1991). The court of appeals reversed the trial court's supplemental property division

order which awarded the petitioner, Judith Wells (Wife), her Public Employee Retirement Association (PERA) benefits and canceled a $7,500 note it had previously ordered the respondent, Curtis Wells (Husband), to pay to the Wife. The issue in this case is whether, following remand to redistribute marital property, the trial court may consider changed circumstances of the wife and husband between the date of the dissolution decree and the date of the post-decree hearing to redistribute the marital property in entering a supplemental order dividing marital property. The answer to this question is yes, and we therefore reverse and remand the case to the court of appeals with directions to reinstate the trial court's supplemental property division order.

I

The twenty-four year marriage of the parties ended with a decree of dissolution of marriage on February 13, 1987. On July 7, 1987, the trial court held a permanent orders hearing and entered an order dividing the marital property of the couple. In making the property division, the trial court considered only that portion of the Wife's PERA account representing her contributions to the plan. Based on this valuation, the trial court awarded the Wife her PERA benefits. On appeal, the court of appeals reversed the trial court's order and remanded for redetermination in light of

our decision in *In re Marriage of Grubb*, 745 P.2d 661 (Colo.1987).[1]

On remand, the trial court addressed the meaning of section 14–10–113(1)(c), 6B C.R.S. (1987), which provides that the court is to consider, as a relevant factor in dividing marital property, the "economic circumstances of each spouse at the time the division of property is to become effective." The trial court interpreted the phrase to mean that it could accept and consider evidence relating to the changed circumstances of the parties during the period of time between the original property division order and the supplemental property division order.[2] Based on the testimony relating to the parties' changed economic circumstances, the trial court awarded the Wife her PERA benefits and canceled a $7,500 note it had previously ordered the Husband to pay to the Wife.

■ The Husband appealed the trial court's supplemental property division order to the court of appeals. He contended that the trial court erred in considering the changed economic circumstances of the parties. The Husband claimed that the trial court was allowed to consider the economic circumstances only as they existed at the time of the original property division order. The court of appeals agreed with the Husband, holding "that the disposition of property must be based upon the conditions that exist as of the date of the decree, even if it is not determined or implemented until a later date." *Wells*, 833 P.2d at 799.

1. *Grubb* held that in valuing vested pension benefits in property settlements courts must consider the contributions of both the employee and the employer that were made during the course of the marriage.

2. The trial court made the following factual findings based on the additional evidence:

The [Husband] has still not filed any tax returns but is still working in his business, which appears to be modestly improving since the date of the dissolution. Additionally, [Husband] has been able to have $30,000 of the $63,000 worth of debt awarded him forgiven. Additionally, assets which were previously awarded to the [Husband] have increased in value from $21,600 to $82,532. [Husband] remains in good health and testified that a person with his education and experience should earn over $40,000 a year.

On the other hand, [Wife] has had a salary increase of $500 a month, and an annuity account which was worth $11,000 in 1987 is now worth $28,000. [Wife] has problems, however, related to significant changes in her health since 1987. She has encountered a congenital loss of hearing in both ears which will require an annual expenditure in the neighborhood of $2,000 for treatments, repairs, and batteries, and she's had to have a hip replacement which has severely limited her lifting ability to 15 pounds or less. [Wife] is not in danger of being fired, but it is clear from the comments of her employment supervisor that her hearing deficits and her lifting ability has definitely affected the probability of her continued employment.

We hold that section 14–10–113(1)(c) requires a trial court to consider the economic circumstances of the respective spouses at the time any hearing relating to the division of marital property is held, including a hearing following a remand for the purpose of dividing the property between the parties.

## II

The Husband contends that the trial court erred in interpreting the language of section 14–10–113(1)(c) to permit consideration of the changed economic circumstances of the parties at the time of the hearing on remand. The Husband claims that the phrase "at the time the division of property is to become effective" contained in section 14–10–113(1)(c) allows a trial court to address the economic circumstances of the parties only as of the date of the original property division hearing, and prohibits a trial court from considering the changed economic circumstances of the parties at a subsequent permanent orders hearing held in accordance with an order of remand from an appellate court. We disagree.

## A

In 1971, Colorado adopted the Uniform Dissolution of Marriage Act, sections 14–10–101 to –133, 6B C.R.S. (1987 & 1992 Supp.), substantially based on the Uniform Marriage and Divorce Act (Uniform Act) as approved by the National Commissioners on Uniform State Laws in 1970.[3] Section 14–10–113, 6B C.R.S. (1987), of the Uniform Dissolution of Marriage Act is entitled "Disposition of Property."[4] Section 14–10–113 is adapted from section 307 of the Uniform Act, although the two sections are not identical.[5] In this case, because the two sections are not identical, we look to general rules governing statutory interpretation, as well as to other jurisdictions that have adopted the Uniform Act. *See In re Marriage of Cargill*, 843 P.2d 1335, 1338 (Colo.1993) (stating that while uniform statutes should be construed to bring uniformity to the law in the various states, there are other factors to consider including the intent of the General Assembly).

## B

The Husband claims that, in this case, the court of appeals remand order is merely a correction of an error that occurred at the time the decree was initially entered, and that the trial court therefore erred in considering additional evidence relating to the parties changed economic circumstances. The husband, however, concedes that the trial court properly considered the economic circumstances of each spouse up

---

**3.** In addition to Colorado, seven states have adopted statutes based on the Uniform Act: Arizona, Illinois, Kentucky, Minnesota, Missouri, Montana, and Washington. *See* Uniform Marriage and Divorce Act, 9A U.L.A. (1987 & 1992 Supp.).

**4.** Section 14–10–113 provides in pertinent part:

(1) In a proceeding for dissolution of marriage ... the court shall set apart to each spouse his property and shall divide the marital property, without regard to marital misconduct, in such proportion as the court deems just after considering all relevant factors including:

. . . .

(c) The economic circumstances of each spouse *at the time the division of property is to become effective,* including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

. . . .

(3) All property acquired by either spouse subsequent to the marriage and *prior to a decree of legal separation* is presumed to be marital property,

. . . .

(5) For purposes of this section only, *property shall be valued as of the date of the decree* or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree.

(Emphasis added.)

**5.** The phrase "the economic circumstances of each spouse at the time the division of property is to become effective" in section 14–10–113(1)(c) is identical to the language in section 307(4) of the Uniform Act. *See* Uniform Marriage and Divorce Act, § 307(4), 9A U.L.A. (1987 & 1992 Supp.). Other jurisdictions, including Illinois and Missouri, have also adopted the same language from the Uniform Act. *See, e.g.,* Ill.Rev.Stat. ch. 40, para. 503(d) (1992 Supp.); Mo.Rev.Stat. § 452.330(1)(1) (1992 Supp.)

to July 7, 1987.[6] In essence, the Husband claims that a trial court may only consider the economic circumstances of the parties up to the time it first addresses and rules on the question of the equitable distribution of property. Once that initial order is entered, he claims, any subsequent hearings on the issue are merely corrections of errors committed by the trial court in the first proceeding. We disagree with the husband's interpretation of the statutory language.

■ The phrase "economic circumstances of each spouse at the time the division of property is to become effective" in section 14–10–113(1)(c) implies that an order of the trial court is necessary to effectuate the equitable division of the property. Final orders and judgments of trial courts are fully effective when they are entered, subject only to the possibility that they may be modified or reversed on the court's own motion, on the motion of the parties, or by an order of an appellate court. *See In re Marriage of Jones,* 627 P.2d 248, 253 (Colo.1981) (holding that a property division that has become final is not subject to modification unless the court finds the existence of conditions that justify the reopening of the judgment); *In re Marriage of Scheuerman,* 42 Colo.App. 206, 207–08, 591 P.2d 1044, 1046 (1979) (same); *cf. Davidson Chevrolet, Inc. v. City & County of Denver,* 138 Colo. 171, 175, 330 P.2d 1116, 1118 (1958) (stating that even irregular and erroneous judgments retain their force and have effect until modified by the trial court, until vacated pursuant to new trial procedures, or until reversed by an appellate court in review proceedings).

■ In this case, the trial court issued a property division order allocating the property between the parties on July 7, 1987. The July 7 property division order was fully effective until the court of appeals reversed the order on appeal because the trial court did not properly value the Wife's PERA benefits. The court of appeals directed the trial court on remand to redistribute the parties' marital property based on a new valuation of the Wife's PERA benefits, which the trial court did in its supplemental property division order of June 19, 1990. The June 19 order was also fully effective at the time it was entered. However, because of the limited nature of the June 19 order, both property division orders are necessary, and therefore effective for determining the rights of each spouse to the marital property. Each order standing alone is ineffectual to give full force and effect to the trial court's allocation of the marital property. The trial court properly took evidence relating to the economic circumstances of each spouse at both hearings because on both occasions the order the trial court entered effectuated a division of marital property.

■ Property division hearings conducted pursuant to section 14–10–113 are equitable in nature and trial courts are authorized to consider evidence of the parties' changed economic circumstances in arriving at a division of property. Courts sitting in equity are not required to ignore the adverse circumstances of the parties lawfully before them and trial courts are vest-

---

**6.** The court of appeals concluded "that the distribution of property must be based upon the conditions that exist *as of the date of the decree." See Wells,* 833 P.2d at 799 (emphasis added). In our view, the court of appeals erred in its conclusion. A court, in interpreting statutory language, is required to give effect to every word, phrase, clause, sentence and section, and cannot presume that the General Assembly used language in a statute idly and with no intent that meaning should be given to it. *City & County of Denver v. Taylor,* 88 Colo. 89, 94–95, 292 P. 594, 596 (1931). Had the General Assembly intended courts to consider only the economic circumstances of the parties as of the date of the decree, instead of the date on which a subsequent hearing is conducted to finalize the property division, it could have so stated. Therefore, while the character and value of the property are established as of the date of the decree of separation or dissolution and cannot be changed or modified because of an increase in value or change in character after that date, *see* § 14–10–113(3) and (5), 6B C.R.S. (1987), the specific language of section 14–10–113(1)(c) requires the trial court to consider the "economic circumstances of the parties at the time the division of property is to become effective." This phrase is not synonymous, either in intent or effect, with the phrase "as of the date of the decree."

ed with broad discretion to fashion an equitable division of the parties' property in a dissolution proceeding. *In re Marriage of Gallo*, 752 P.2d 47, 54 (Colo.1988). In our view, the General Assembly intended to promote the equitable distribution of property among the parties by addressing and providing for the parties' present and continuing needs without having to resort to an award of maintenance. *See Jones*, 627 P.2d at 252–53 (stating that a highly relevant factor to be considered by the court in effecting a just division of marital property is the extent to which the division will promote the objective of providing for each party's financial needs without maintenance).

### C

Our interpretation of section 14–10–113(1)(c) is also consistent with other jurisdictions that have interpreted the Uniform Act phrase "economic circumstances of each spouse at the time the division of property is to become effective." *See In re Marriage of Fuggiti*, 130 Ill.App.3d 190, 85 Ill.Dec. 658, 474 N.E.2d 386 (1985); *In re Marriage of Clearman*, 97 Ill.App.3d 641, 53 Ill.Dec. 91, 423 N.E.2d 283 (1981); *see also In re Marriage of Brooks*, 138 Ill. App.3d 252, 93 Ill.Dec. 166, 486 N.E.2d 267 (1985); *Hartley v. Hartley*, 645 S.W.2d 218 (Mo.App.1983).[7]

In *Clearman*, the Illinois court of appeals addressed an appeal by the husband following a judgment of the trial court dividing the marital property after an order of remand from the court of appeals on the issue of property division. On remand, the trial court conducted a hearing and took additional evidence showing that the wife, subsequent to the initial property division order, had suffered a serious deterioration in her health. Based on the wife's changed circumstances and the same statutory language at issue in this case, the trial court awarded the wife substantially all of the assets of the marriage. In affirming the

award of the trial court, *Clearman* stated that:

> [G]iven the disproportionate contributions of the parties to the acquisition of the marital assets, favoring [the wife], *and more importantly, the extraordinary circumstances intervening after our first opinion,* to-wit her unfortunate and tragic deterioration in health, with coinciding reduction in employment possibilities, we find no abuse of discretion in the court's equitable and just division of the couple's assets.

*Clearman*, 53 Ill.Dec. at 96, 423 N.E.2d at 288 (emphasis added).

Shortly after *Clearman*, the Illinois Court of Appeals again addressed the statutory language at issue in this case in *Fuggiti*. *Fuggiti* also involved an order of remand from the appellate court for the determination of the appropriate reallocation of the marital property. On remand, the trial court received additional evidence and found that "a substantial change in circumstances had occurred since the filing of the appellate court's opinion." *Fuggiti*, 85 Ill.Dec. at 661, 474 N.E.2d at 389. The wife had been diagnosed as having a severe form of lung cancer and was unable to work. Based on the supplemented record, the trial court entered a judgment with respect to the property distribution which essentially reaffirmed its previous distribution. On appeal, the court of appeals held that "the actions of the trial court on remand were proper because the court could not have made an equitable disposition of marital property ... without considering the current health and economic circumstances of the parties." *Fuggiti*, 85 Ill. Dec. at 662, 474 N.E.2d at 390.

We agree with the Illinois courts that it is impossible for a trial court to weigh the equities involved in the division of marital property if the court is unable to consider the changed circumstances of the parties during the pendency of the litigation. Moreover, there is no persuasive reason for us not to follow the Illinois courts and

---

**7.** Both Illinois and Missouri have adopted statutes including the same language of section 307(4) of the Uniform Act. *See supra* note 5.

construe the Colorado statute to allow trial courts to consider the economic circumstances and equities of the parties as they exist at the time the court finally distributes the marital property. *See Reeves v. Reeves*, 233 Cal.App.3d 651, 284 Cal.Rptr. 650, 653 (1991) (holding that in order to promote consistency, courts should ordinarily adopt the construction given uniform statutes by other jurisdictions unless the construction is manifestly erroneous); *see also* § 14–10–104, 6B C.R.S. (1987) (directing courts to apply and construe the Uniform Dissolution of Marriage Act "so as to effectuate its general purpose to make uniform the law with respect to the subject of this article among those states which enact it").

### III

The court of appeals erred in concluding that the trial court may only consider the economic circumstances of each spouse as of the date of the decree. In determining the circumstances of the parties for purposes of making an equitable award of the couple's marital property, a trial court may properly consider the economic circumstances of each spouse at the time of the permanent orders hearing. The trial court correctly heard and considered evidence concerning the parties' changed economic circumstances in dividing the couple's marital property and did not abuse its discretion in awarding her PERA benefits to her and canceling a note it had previously ordered the Husband to pay to the Wife.

Accordingly, we reverse and remand the case to the court of appeals with directions to reinstate the trial court's supplemental property division order.

ROVIRA, C.J., dissents.

Chief Justice ROVIRA dissenting:

The majority holds that "section 14–10–113(1)(c) requires a trial court to consider the economic circumstances of the respective spouses at the time *any* hearing relating to the division of marital property is held, including a hearing following a remand for the purpose of dividing the property between the parties." Maj. op. at 696

(emphasis added). Because I believe such a holding is contrary to both the plain meaning of section 14–10–113(1)(c), 6B C.R.S. (1987), and the Uniform Dissolution of Marriage Act as a whole, I respectfully dissent.

### I

The parties' childless, twenty-four-year marriage was terminated by a decree of dissolution of marriage on February 13, 1987. The permanent order dividing the marital property was entered on July 7, 1987, and awarded Mrs. Wells the entirety of her contribution to her PERA pension fund. The trial court valued the fund at $35,060.50—valuing only her contribution to the plan. Mr. Wells appealed the property division, arguing that the trial court erred by failing to consider the contribution that was made by the employer during the course of the marriage. *See In re Marriage of Grubb*, 745 P.2d 661 (Colo.1987). The court of appeals reversed and remanded directing the trial court to

> consider the PERA benefits as being marital property subject to division pursuant to the supreme court's holding in [*In re Marriage of*] *Grubb*, [745 P.2d 661 (Colo.1987),] as well as in *In re Marriage of Nelson*, 746 P.2d 1346 (Colo. 1987) and *In re Marriage of Gallo*, 752 P.2d 47 (Colo.1983). However, the trial court is not required to divide the pension benefits involved here with mathematical precision. An equitable division, when considering the situation of the parties, should be the objective.

*In re Marriage of Wells*, No. 87CA1268, slip op. at 1 (Colo.App. Dec. 8, 1988) (not selected for official publication).

On remand, the trial court conducted a supplemental hearing on May 29, 1990, to consider evidence of the full value of the PERA. During this hearing, it considered evidence relating to changes in the economic circumstances of the parties which had occurred subsequent to July 1987. This evidence included testimony concerning Mrs. Wells' congenital hearing loss, requiring binaural hearing aids, and degenerative

hip, which had required a total hip replacement in 1988. Additionally, an expert testified that the present value of the PERA pension benefits as of February 1987 (the date of the decree of dissolution) was between $160,315 (if Mrs. Wells worked until age 63), and $202,985 (if Mrs. Wells worked until age 59).[1]

Based upon this "new evidence," the trial court awarded 100% of the PERA benefits to Mrs. Wells and canceled a $7,500 note owed to Mrs. Wells from Mr. Wells. As pertinent to the issue at hand, the trial court made the following findings of fact and conclusions of law:

A literal interpretation of [section 14–10–113, 6B C.R.S. (1987)] requires the Court to consider the economic circumstances and changes which have taken place since the date of the dissolution and which were in existence and probable at the time of the hearing on remand. Both parties have encountered significant changes in their economic circumstances since the dissolution.

The Respondent has still not filed any tax returns but is still working in his business, which appears to be modestly improving since the date of the dissolution. Additionally, Respondent has been able to have $30,000 of the $63,000 worth of debt awarded to him forgiven. Additionally, assets which were previously awarded to the Respondent have increased in value from $21,000 to $82,532. Respondent remains in good health and testified that a person with his education and experience would earn over $40,000 a year.

On the other hand, Petitioner has had a salary increase of $500 a month, and an annuity account which was worth $11,000 in 1987 is now worth $28,000. Petitioner has problems, however, related to significant changes in her health since 1987. She has encountered a congenital loss of hearing in both ears which will require an annual expenditure in the neighborhood of $2,000 for treatments, repairs, and batteries, and she's had to have a hip replacement which has severely limited her lifting ability to 15 pounds or less. Petitioner is not in danger of being fired, but it is clear from the comments of her employment supervisor that her hearing deficits and her lifting ability had definitely affected the probability of her continued employment.

Considering all of these factors and taking the statute literally, the Court finds that the best resolution of this problem is to award to the Petitioner her entire PERA benefit and cancel the note which was previously ordered to be made by Respondent payable to her.... [T]he Court considers this order to be an equitable division of the property of the parties, considering their economic circumstances at the time the order becomes effective.

## II

Under the Uniform Dissolution of Marriage Act (the Act), a trial court must make three determinations with respect to marital property. First, the court must characterize the property of both spouses as either marital property or separate property. To aid the trial court in this determination, the Act contains a presumption that all property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is marital property. *See* § 14–10–113(3), 6B C.R.S. (1987). Next, the court must value the marital property as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree of dissolution. *Id.* § 14–10–113(5). *See In re Marriage of Price,* 727 P.2d 1073, 1077 (Colo.1986); *In re Marriage of Thompson,* 706 P.2d 428, 430 (Colo.App.1985). Finally, the court must divide the marital property in accordance with section 14–10–113(1), which provides:

(1) In a proceeding for dissolution of marriage or in a proceeding for legal separation or in a proceeding for disposi-

---

**1.** At all times relevant to this appeal Mrs. Wells has been employed by the Jefferson County School District.

tion of property following the previous dissolution of marriage by a court which at the time of the prior dissolution of the marriage lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall set apart to each spouse his property and shall divide the marital property ... in such proportions as the court deems just after considering all relevant factors including:

(c) The economic circumstances of each spouse *at the time the division of property is to become effective....*

*Id.* § 14–10–113(1) (emphasis added). At issue in this case is the date (or, under the majority rationale, dates) upon which a property division becomes effective.

In concluding that a trial court is required to consider the economic circumstances of the spouses at the time any hearing relating to the division of marital property is held, the majority reasons:

Had the General Assembly intended courts to consider only the economic circumstances of the parties as of the date of the decree, instead of the date on which a subsequent hearing is conducted to finalize the property division, it could have so stated. Therefore, while the character and value of the property are established as of the date of the decree of separation or dissolution and cannot be changed or modified because of an increase in value or change in character after that date, *see* § 14–10–113(3) and (5), 6B C.R.S. (1987), the specific language of section 14–10–113(1)(c) requires the trial court to consider the "economic circumstances of the parties at the time the division of property is to become effective." This phrase is not synonymous, either in intent or effect with the phrase "as of the date of the decree."

Maj. op. at 697 n. 6. I disagree. It is clear that the General Assembly did not use the phrase "as of the date of the decree" in section 14–10–113(1)(c) because the General Assembly clearly contemplated circumstances under which the property division was not to "become effective" until after the date of the decree of dissolution.

Three such circumstances are expressly set forth by statute. They are proceedings for disposition of property following a previous dissolution of marriage by a court which (1) lacked jurisdiction over the spouse or (2) lacked jurisdiction to dispose of the property prior to the dissolution of the marriage, § 14–10–113(1), 6B C.R.S. (1987), and (3) the entry of a decree with respect to property disposition may be deferred by the court until after the decree of dissolution where such deferral is in the best interests of the parties. *Id.* § 14–10–106(1)(b). Thus, had the General Assembly used the phrase "the date of the decree," it would also have had to create three exceptions.

Instead, the General Assembly used one phrase, "at the time the division of property is to become effective," applicable to all circumstances. These circumstances necessarily include the case at hand, where the date of the decree of property distribution is the same as the "effective" date of that distribution—July 1987. Thus, I find no support in the language of the statute for the majority's conclusion. Moreover, using the majority's reasoning, had the General Assembly intended the economic circumstances to be considered at the time of any hearing concerning property disposition, it would have so stated.

The majority recognizes that "[f]inal orders and judgments of trial courts are fully effective when they are entered," maj. op. at 697, and that the provisions of a decree respecting "property disposition may not be revoked or modified unless the court finds the existence of conditions that justify the reopening of a judgment." C.R.C.P. 60(b). However, the majority holding completely fails to give effect to the finality that the General Assembly intended with respect to property divisions—the majority finds at least two effective dates for the disposition of the marital property in this case—the original property disposition order of July 7, 1987, and the supplemental property disposition order of June 19, 1990. Such a conclusion renders, in effect, each spouse an insurer of the other spouse's

physical and financial condition until the conclusion of the last appeal concerning property division.[2] I would not place such a burden on parties who have chosen to terminate their marital relationship. The plain language of section 14–10–122(1)(a) demonstrates that the General Assembly never intended a property disposition decree to be so ethereal.

### III

In contrast to the majority's conclusion, I am of the opinion that a more common sense interpretation of section –113(1)(c) requires that the economic circumstances of the parties be considered on only one date—the effective date of the original property division order, July 7, 1987. Accordingly, while the trial court properly considered the increased value of the PERA pension brought about by its consideration of the employer's contribution as fixed in 1987, it erred in considering the economic circumstances of the parties as of May 1990.

The consideration of economic circumstances after the date of the original property division order is nothing more than an invitation for the trial court to effectively revalue the marital property as of the date of remand for redistribution. Indeed, that is precisely what occurred here. As noted above, the trial court relied upon the following facts in redistributing the marital property: (1) The reduction in the value of Mr. Wells' assigned marital debt from $63,000 to $33,000; (2) the increase in value of the assets awarded to Mr. Wells from $21,000 to $82,532; and (3) the increase in value of Mrs. Wells' annuity account from $11,000 to $28,000. Reliance on these facts amounts to a de facto revaluation of the marital assets under the guise of considering the economic circumstances of the parties during the redistribution of the marital estate—a clear violation of the valuation requirements of section –113(5).

**2.** In this case the parties bore the obligation of the other's financial well-being for over three

Accordingly, I would affirm the opinion of the court of appeals.

years from the date of the decree of dissolution.