24CA1628 Marriage of Bates 01-22-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1628
Arapahoe County District Court No. 19DR30703
Honorable Michelle Jones, Judge

---

In re the Marriage of

Silke Bates,

Appellee,

and

Kevin Bates,

Appellant.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE SCHUTZ
J. Jones and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 22, 2026

---

Anne Whalen Gill, LLC, Anne Whalen Gill, Castle Rock, Colorado, for Appellee

Belzer Law, Aaron B. Belzer, Ashlee N. Hoffmann, Boulder, Colorado, for Appellant

¶ 1     In this dissolution of marriage case involving Kevin Bates (husband) and Silke Bates (wife), husband appeals the property distribution entered on remand from *In re Marriage of Bates*, (Colo. App. No. 22CA0086, Dec. 15, 2022) (not published pursuant to C.A.R. 35(e)) (*Bates I*).  We affirm the judgment.

## I.     Relevant Facts

¶ 2     The parties married in 2005 and have two children, a son born in 2005 and a daughter born in 2008.

¶ 3     In 2021, the district court dissolved the marriage and entered permanent orders.  At that time, husband had retired and was receiving a monthly pension of $4,528.  The parties agreed that 41% of the pension was marital property to be split equally.  The premarital portion, valued at $633,136, was set aside to husband as his separate property.  The court valued the marital portion of husband's 401(k) at $976,069 and the marital residence at $550,000.

¶ 4     The district court ordered (1) wife to receive $921 per month from husband's monthly pension payment for a total monthly income of $2,863; (2) the 401(k) to be divided 55% to husband and 45% to wife; (3) the marital residence and its mortgage to be

allocated to wife; (4) a disproportionate property distribution favoring wife; (5) equal parenting time for their daughter, then nearly thirteen years old; and (6) their then sixteen-year-old son to remain with husband. The court explained the unequal property distribution by emphasizing wife's financial needs and husband's substantial separate property, including $633,136 of his pension.

¶ 5　　Husband appealed that decision. He contended that the district court improperly double-counted his separate property, once by dividing the marital portion of his pension and again by factoring it into the overall property distribution. A division of this court agreed, reversed the entire property distribution, and remanded to the district court for reconsideration of that issue.

¶ 6　　In 2024, the district court held a two-day hearing. The court first made findings on the parties' present economic circumstances, including the following:

- Husband, age sixty-two, continued to receive the same monthly pension amount and would soon qualify for Social Security benefits.

2

- Wife, nearly fifty-nine, had slightly increased her employment earnings, and with her share of husband's pension, was outearning him by $500 per month.

- Wife "expect[ed] to retire in the near future," at which time her employment income would be replaced by a "smaller amount" of Public Employees' Retirement Association (PERA) benefits. In addition, she would receive her $921 monthly share of husband's pension, a modest monthly pension from Germany, plus half of husband's forthcoming Social Security benefits.

- Once wife retired and husband began receiving Social Security benefits, his combined retirement income would surpass hers.

- Husband had $370,062 in total separate property; wife had none.

- After the 2021 permanent orders, the parties continued paying marital expenses from the 401(k), which had dropped to $688,819 by year's end, largely because their combined monthly expenses exceeded their incomes.

Husband held a $262,000 separate property interest in the account.

- The marital residence had appreciated $116,000 since the divorce decree. Wife used funds from a Vanguard account, which was awarded to her in the original permanent orders, to pay off the mortgage.

- The following table summarizes the district court's overall property distribution:

| Asset | Wife's Award | Husband's Award | Husband's Separate Property |
|---|---|---|---|
| Marital Residence | $550,000 | | |
| Vehicles | $23,000 | $30,700 | |
| Bank Accounts | $14,717 | $11,117 | |
| Investment Accounts | $297,951 | $147,573 | $89,136 |
| Husband's 401(k) | | $688,819 | $262,000 |
| Pension and Retirement Accounts | $71,028 | $174,364 | $10,926 |
| Wife's Survivor Benefit for Husband's Pension | $215,062 | | |
| Misc. | $1,000 | $1,248 | $8,000 |
| Debts | ($16,703) | ($16,703) | |
| TOTAL | $1,156,055 | $1,037,118 | $370,062 |

In the end, wife received approximately 53% of the marital estate and husband 47%.

¶ 7     Husband moved for post-trial relief, which the district court denied.

¶ 8     Husband appeals, principally contending that the property distribution was inequitable because he ended up with the diminished 401(k) while wife received the appreciated marital residence.

## II.     Property Distribution

### A.     Standard of Review

¶ 9     A district court has great latitude in making an equitable property distribution based on the facts and circumstances of each case, and we will not disturb its decision unless it has abused its discretion. *See* § 14-10-113(1), C.R.S. 2025; *In re Marriage of Collins*, 2023 COA 116M, ¶ 19. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28.

¶ 10     We review questions of law de novo. *See id.*

## B.     Discussion

### 1.     Present Economic Circumstances

¶ 11     To begin, husband argues that the property distribution was unfair because the district court erred in assessing the parties' present economic circumstances on remand.  We disagree.

¶ 12     The date of the dissolution decree fixes both character and value of property, and those determinations are unaffected by later depreciation, appreciation, or reclassification.  *See In re Marriage of Wells*, 850 P.2d 694, 697 n.6 (Colo. 1993).  But the court on remand must reallocate the marital estate based on the parties' current economic circumstances under section 14-10-113(1)(c) and evidence from the previous hearing and the hearing on remand. *See Wells*, 850 P.2d at 697 n.6; *see also In re Marriage of Joel*, 2012 COA 128, ¶ 28 ("[W]hen deciding how to equitably distribute property, the [district] court must consider the parties' economic circumstances at the time property is to be distributed, the court remains obligated to value property as of the date of the decree."); *In re Marriage of Lee*, 781 P.2d 102, 104 (Colo. App. 1989) (a district court on remand may exercise discretion in determining whether

additional evidence is necessary or whether it may rely on evidence from the prior hearing).

¶ 13    Here, the district court heard testimony about the parties' current and prospective retirement income. Wife, a school bus driver, testified that she was actively contemplating retirement. Although not sure about the exact timing, she was clear that retirement was nearing, saying that it might occur "soon[er] or later," depending on the outcome of the hearing and what assets she would be awarded. Both parties acknowledged that wife would receive $561 per month from her German pension, roughly $830 per month in PERA benefits if she retired at sixty-five, and half the amount of husband's monthly Social Security payment.

¶ 14    As for husband, an expert at the original permanent orders hearing said that he would surely receive Social Security benefits. At the remand hearing, wife testified that he could begin collecting them now. And husband conceded that he would eventually draw them. Husband was also receiving retirement income from his past employment at Raytheon in the total amount of $4,527 monthly, which was divided between him ($3,606) and wife ($921).

¶ 15    In assessing the parties' present economic circumstances, the district court found that while wife currently earns $500 more per month than husband, her income will be reduced significantly in retirement. By contrast, the combination of husband's pension and future Social Security benefits will ultimately surpass wife's income.

¶ 16    Husband insists that the district court improperly speculated about the future instead of focusing solely on the parties' present economic reality. The court, however, did not engage in conjecture. It merely relied on the evidence and argument the parties presented. And considering likely retirement income as part of the parties' economic circumstances is appropriate. *See* § 14-10-113(1)(c) (in making distribution of marital property the court shall consider the "economic circumstances of each spouse at the time of the division of property is to become effective"); *see also In re Marriage of Morehouse,* 121 P.3d 264, 266 (Colo. App. 2005) (district court can consider likely Social Security benefits as part of the parties' relevant economic circumstance and can justify an uneven property distribution).

¶ 17    Husband also argues that the district court erred by considering his potential income without accounting for his

projected expenses. But he offers no legal analysis, so we decline to address the issue. *See In re Marriage of Zander*, 2019 COA 149, ¶ 27 (an appellate court may decline to consider an argument not supported by legal authority or any meaningful legal analysis), *aff'd*, 2021 CO 12; *see also Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc.*, 2017 CO 69, ¶ 40 (an appellate court will "decline to assume the mantle" when parties offer no supporting arguments for their claims). Insofar as husband expands his argument in the reply brief, we do not address those arguments. *See In re Marriage of Dean*, 2017 COA 51, ¶ 31.

¶ 18     Next, husband challenges the district court's findings that he was in a stronger financial position than wife and that he excessively spent funds between the date of final orders and the hearing on remand.

¶ 19     The record shows that husband had a steady pension, could collect Social Security in the near future, and held $370,062 in total separate property. Wife, on the other hand, testified that her income fluctuated and often did not meet her expenses, forcing her to use money from her investment accounts she had been awarded in the original permanent orders.

¶ 20    The record also reveals that husband's higher monthly expenses were due in part to his choice to enroll the children in private parochial school and pay the associated tuition.[1]  Wife reported that her income was insufficient to contribute toward the children's tuition.  Husband testified that wife had no interest in contributing toward tuition and that even if wife had significant financial resources she would never help.  At times, the tuition would exceed husband's income.  To bridge that gap, husband drew down the marital portion of the 401(k) to cover the shortfall, thereby preserving his separate property portion of the 401(k).

¶ 21    Wife admitted that around $45,000 of the 401(k) was withdrawn to cover her expenses in late 2021 but maintained that she did not have control over the account and never personally

---

[1] Husband repeatedly characterizes the private school tuition payments as "court ordered."  But the court's order is not so broad.  At the permanent orders hearing, wife testified she could not afford to pay for private tuition, but father indicated that continuing the children's private school education was vital to him and the children and that he was willing to make the full amount of those payments.  The permanent orders did not require the children to continue to attend private schools, but noted that if they did, father would be responsible for payment of their tuition.  Despite his economic limitations, father has continued to pay for the private school tuition.

"received a penny" from it. She added that she lived "frugally." Moreover, husband incurred substantial litigation expenses, spending $129,087 in attorney fees, anticipating another $15,000 from the remand hearing, and reporting that he spent $63,280 in fees related to the *Bates I* appeal.

¶ 22 As a consequence of father's spending on attorney fees, tuition payments, and personal expenses, which totaled approximately $250,000, and wife's $45,000 in personal expenses, the marital value of the 401(k) had been reduced by approximately $300,000 between the entry of final orders and the remand hearing.

¶ 23 Because the record supports the district court's findings, we will not disturb them. *See Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12 (the appellate court generally reviews the district court's factual findings for clear error, meaning that we will not disturb them if they are supported by the record). To the extent that husband asks us to reweigh the evidence, we decline. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (it is for the district court to determine witness credibility and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom); *In re Marriage of Amich*, 192

P.3d 422, 424 (Colo. App. 2007) (the district court can believe all, part, or none of a witness's testimony).

¶ 24    Husband's claim that the district court penalized him for paying for parochial school in violation of his First Amendment rights is unpreserved. Because he never raised this issue below and the court did not rule on it, we decline to address it. *See In re Marriage of Pawelec*, 2024 COA 107, ¶ 38 (declining to review as unpreserved an issue that was never raised before or decided by the district court); *see also In re Marriage of Ensminger*, 209 P.3d 1163, 1167 (Colo. App. 2008) (an issue not preserved may not be raised for the first time on appeal).

### 2.    Marital Residence

¶ 25    Husband contends that the district court improperly relied on the original award of the marital residence to wife rather than reevaluating it in light of the parties' present economic circumstances. We are not persuaded.

¶ 26    In *Bates I,* the division told the district court to reconsider its allocation of the marital residence to wife. It specifically instructed the court to assess the parties' current economic circumstances, including whether it would be desirable to allocate the residence to

the parent with whom the children primarily live. *See* § 14-10-113(1)(c).

¶ 27   On remand, the district court did exactly that. The court found that there was no primary parent because the son was already an adult and the daughter was sharing equal time with both parties. The court also found, with record support, that wife had (1) continued to live in the residence since the original permanent orders; (2) maintained the property and made it into her home; and (3) paid off the mortgage with her own funds, triggering tax consequences. Given these circumstances, the court determined that it would be unjust to disturb the original award.

¶ 28   On this record, we cannot say that the district court's decision was manifestly unreasonable or unfair. *See Collins*, ¶ 19.

¶ 29   Nor are we persuaded by husband's related argument that the district court improperly speculated that it would have awarded the residence to wife in the original permanent orders. The court clearly understood that it could have awarded the residence to either party.

¶ 30   Finally, given our earlier disposition, we reject husband's assertion that the district court erred by relying on its finding that

13

he would be in a stronger financial position when awarding the marital residence.

### 3. Overall Property Distribution

¶ 31 Husband argues the district court's overall property distribution was inequitable because he was left with the diminished 401(k) while wife received the marital residence that had increased in value. We discern no error.

¶ 32 Initially, we note that we do not look at particular assets in isolation. Instead, the critical question is whether the overall property distribution was equitable. *See In re Marriage of Hunt*, 909 P.2d 525, 537-38 (Colo. 1995) (an allocation of pension benefits is only a part of the district court's equitable distribution of the overall marital property, and an appellate court should not disturb the balance achieved by the distribution absent a clear abuse of discretion). And an equitable property distribution does not necessarily mean equal. *See In re Marriage of Capparelli*, 2024 COA 103M, ¶ 9.

¶ 33 The district court explained that while wife currently earned $500 more per month, husband's pension and Social Security would ultimately exceed her retirement income. The court found

that although she received $118,937 more in marital property, that amount included a $215,062 survivor benefit that she could only collect if she outlived husband, and its value decreased every year. And without that benefit, he would receive around $96,000 more than her. Again, he had $370,062 in separate property, whereas she had none.

¶ 34    We also note that husband's percentage of the total marital estate was diminished by the decreased value of the marital 401(k), which was allocated to him, and the increased value of the marital home, which was allocated to wife. But recall that husband chose to spend approximately $300,000 from the marital portion of the 401(k) between final orders and remand, and only $45,000 of that sum was attributed to wife's expenses. Thus, he personally benefited from the vast majority of the expenditures that reduced the marital portion of the 401(k).

¶ 35    Given these circumstances, we cannot say that the district court abused its broad discretion in allocating wife 53% and husband 47% of the marital estate. *See Collins*, ¶ 19.

### III. Appellate Attorney Fees and Costs

¶ 36    Husband asks for his appellate attorney fees under section 14-10-119, C.R.S. 2025, based on an asserted disparity in the parties' financial resources. *See In re Marriage of Gutfreund*, 148 P.3d 136, 141 (Colo. 2006) ("Section 14-10-119 empowers the [district] court to equitably apportion costs and fees between parties based on relative ability to pay."). Given the parties' similar economic circumstances, and husband's demonstrated capacity to spend extraordinary amounts on attorney fees, we deny his request. *See* C.A.R. 39.1.

¶ 37    Because we affirm the judgment, husband is not entitled to an award of appellate costs. *See* C.A.R. 39(a)(2) ("[I]f a judgment is affirmed, costs are taxed against the appellant.").

### IV. Disposition

¶ 38    The judgment is affirmed.

JUDGE J. JONES and JUDGE GROVE concur.