*In re* MARRIAGE OF ROSE LIPSCH, Petitioner-Appellee, and WILLIAM LIPSCH, Respondent-Appellant.

First District (2nd Division)    No. 79-274

Opinion filed July 1, 1980.

Clifford A. Silverman, of LeVine, Krupa, Wittenberg, Eisner, Newman & Silverman, of Chicago, for appellant.

Gomberg & Schaps and Vincent E. Vitullo, both of Chicago, for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Petitioner, Rose A. Lipsch, instituted this proceeding seeking to dissolve her marriage to respondent, William C. Lipsch, and distribute the marital property. The marriage was dissolved pursuant to judgment and custody of the couple's two children was awarded to petitioner. After several hearings, the trial court issued a supplemental decree which provided for the distribution of marital property, child support payments, and an award of attorney's fees to petitioner's counsel. On appeal from that decree respondent asks this court to consider: (1) whether the trial court erred when it failed to order a mistrial; (2) whether it was error to order distribution of the marital house to petitioner; and (3) whether the award of attorney's fees was unreasonable.

On August 9, 1977, petitioner filed a complaint for divorce alleging

mental cruelty. A bifurcated proceeding, pursuant to the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, pars. 101 through 802) (the Act), was commenced on June 22, 1978. The record indicates the parties were married on July 6, 1960. Two children resulted from that marriage: one born on July 27, 1961, and the second born February 19, 1962. Petitioner adduced sufficient evidence to establish prima facie grounds for dissolution. The trial court ordered the marriage dissolved, effective July 19, 1978, and awarded to petitioner custody of the two boys.

At the subsequent hearings on property distribution, support, maintenance, and attorney's fees, the parties testified to their incomes, expenses, assets, and debts. The parties stipulated to that which was marital property.

Six days after the hearings were completed, petitioner's attorney mailed a letter to the trial court with a copy posted to respondent's counsel. The correspondence directed the reader's attention to an enclosed copy of a recently dated check which allegedly related to respondent's income. Petitioner's attorney asked the court to give the letter and its enclosure his attention when he ruled on the instant case.

Less than a week later respondent filed his motion for a mistrial alleging the letter had tainted the proceedings. When a hearing was held on that motion, petitioner moved to reopen the proofs of fact. The trial court stated he never considered the letter. He then denied respondent's motion and granted petitioner's.

Additional hearings were held to ascertain respondent's unreported income from outside sources during 1977 and 1978. At the conclusion of these hearings the trial court made certain findings and held that to compel respondent to provide periodic maintenance for petitioner under these circumstances would be impractical. The trial court also evaluated the parties' contributions to the marriage, their financial positions and needs, and other relevant factors. The trial court estimated that a reasonable periodic payment to petitioner would, if ordered, amount to $24,000 over eight years. He then awarded the marital house to petitioner and distributed the remainder of the stipulated marital property.

Petitioner's attorney filed an affidavit in support of his request for an award of fees. That affidavit set forth an itemized account of billable time spent on the instant case. A total of 10½ hours were spent in court. Fifteen hours and 45 minutes were spent on office preparation tasks. The trial court awarded attorney's fees at the rate of $100 per hour for court time and $75 per hour for office time. Respondent was ordered to contribute approximately three-quarters of the fees, or $1,500, and petitioner was ordered to pay the remainder.

## I.

■■ Respondent first claims the trial court erred when it declined to declare a mistrial. He contends the letter sent by petitioner's counsel was so unethical as to taint the entire proceedings. Furthermore, he alleges the conduct breached a prohibition contained in the Disciplinary Rules of the Code of Professional Responsibility. He cites no specific authority in support of this view.

Disciplinary Rule 7-110(B) of the American Bar Association Code of Professional Responsibility (1977) provides, in pertinent part, as follows:

> "In an adversary proceeding, a lawyer shall not communicate * * * as to the merits of the cause with a judge * * * before whom the proceeding is pending, except * * * (2) [i]n writing if he promptly delivers a copy of the writing to opposing counsel or to the adverse party if he is not represented by a lawyer."

(*Cf.* Disciplinary Rule 7-110(b)(2) of the Illinois Code of Professional Responsibility (79 Ill. 2d R. 7-110(b)(2)) (same language).) Counsel for respondent received a copy of the letter sent by petitioner's attorney. The trial court stated he did not consider the letter in his final determination. Although we do not approve of this unorthodox procedure, we believe respondent failed to show either taint or breach of the minimum standards of professional ethics. The trial court did not err in failing to declare a mistrial.

## II.

Respondent next contends the distribution of the marital house was error because the trial court did not make specific findings on each factor set forth in section 503(c) of the Act. (See Ill. Rev. Stat. 1977, ch. 40, par. 503(c).) Furthermore, he claims the distribution is inequitable because he received much less in value than did his wife.

● 2 Although equal division of property is not required by section 503 (see *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 574, 376 N.E.2d 1382), "* * * the trial court must consider all relevant factors before exercising its discretion in disposing of the marital property. [Citations.]" (*In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 635, 397 N.E.2d 488.) We believe the trial court satisfied the requirements of section 503(c). The record discloses that the trial court considered the value of the parties' resources; the duration of the marriage and petitioner's homemaking contributions; the economic disparity of the parties' earning potentials subsequent to dissolution; the custodial award of the children to petitioner; and the fact that the distribution was in lieu of any future maintenance. Although the court did not list these factors serially, with a separate finding for each, the record indicates facts noted by the court

which fall within the scope of these considerations. He calculated what he thought would represent an equitable sum in maintenance for petitioner. Maintenance was found to be an unacceptable alternative. (See, *e.g., In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1132, 398 N.E.2d 126.) Petitioner was therefore awarded an interest in the marital house. That interest did not exceed the sum of the maintenance calculation.[1] Thus, equitable apportionment, supported by the record, was achieved.

### III.

Lastly, respondent claims the fees awarded by the court to petitioner's attorney were excessive. The record supports the trial court's finding that the itemized account of hours was satisfactory. We find no abuse of discretion. (*Green v. Green* (1976), 41 Ill. App. 3d 154, 168, 354 N.E.2d 661; see also Ill. Rev. Stat. 1977, ch. 40, par. 508.) Accordingly, the supplemental decree entered by the circuit court of Cook County is affirmed.

Judgment affirmed.

STAMOS and HARTMAN, JJ., concur.

---

[1] Respondent also contends the trial court erroneously considered his possible earnings from Windy City Roofing. He claims that since the amount of these earnings, if any, is not of record, the trial court was impermissibly speculative in its apportionment. (See generally *In re Marriage of Olsher*, at 636 (absent evidence of stock's present value, distribution thereof is error).) *Olsher* is inapposite. Here, respondent declined to give the necessary information. The finder of fact evaluated his testimony, and that of his associate's, on the purported sale of the roofing business. Little weight was given to that testimony. Respondent cannot use his own failure to testify as a means to delay distribution. Consideration of those earnings was not against the manifest weight of the evidence.