2025 IL App (1st) 242214-U

FIRST DIVISION
June 30, 2025

No. 1-24-2214

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| SHEILA VILLACAMPA, | ) | Appeal from the |
| | ) | Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 2016 D 009974 |
| | ) | |
| CASMIR MUNGAHO, | ) | The Honorable |
| | ) | Bradley Trowbridge, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

*HELD*: Judgment affirmed as appellant fails to show trial court abused its discretion in its distribution of real property pursuant to final dissolution, where two parcels had already been deeded to GAL and remaining property was awarded to appellant.

¶ 1 Plaintiff-appellant Sheila Villacampa (appellant) appeals from the trial court's judgment for dissolution of marriage entered on November 1, 2024, which dissolved her marriage to defendant-appellee Casmir Mungaho (appellee), incorporated an allocation judgment with

respect to their three minor children,[1] and distributed property between the parties. In this appeal, appellant contends that the trial court abused its discretion by failing to properly consider statutory factors in its distribution of property, by adopting appellee's proposed order without conducting independent fact-finding and analysis, and by imposing an annual financial reporting requirement on her. She asks that we reverse the trial court's judgment regarding the division of marital property and remand with directions to the court to "properly consider the statutory factors" and "make independent findings of fact and conclusions of law." For the record, appellee has not filed an appearance or a brief in this matter. We entered an order taking the case for consideration on the record and appellant's brief only, and we proceed with our review accordingly, pursuant to *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). For the following reasons, we affirm.

¶ 2                                                    BACKGROUND

¶ 3            In this appeal, appellant challenges only the trial court's distribution of property, specifically, three parcels of land. Aside from providing pertinent background, we limit our discussion to facts in the record bearing on that topic as much as possible. In addition, we

---

[1] The allocation judgment was the subject of a separate appeal instituted by appellant and a decision in that matter was entered via Summary Order issued by the present panel of this Court. See *Villacampa v. Mungaho*, No. 1-24-1215 (April 21, 2025) (unpublished summary order filed pursuant to Illinois Supreme Court Rule 23(c)(4), (5), (6) (eff. Feb. 1, 2023)). It, along with a Rule 23 decision in another prior appeal brought by appellant in 2021 also concerning the parties' divorce (see *In re Marriage of Villacampa*, 2021 IL App (1st) 210073-U) will be noted where relevant. See *Auto-Owners Ins. Co. v. Konow*, 2016 IL App (2d) 150823, ¶ 5 (citing *People v. Eubanks*, 283 Ill. App. 3d 12, 24 (1996) to declare that appellate court may take judicial notice of its own records); accord *People v. Thomas*, 137 Ill. 2d 500, 517-18 (1990) (appellate courts may take judicial notice of appellate court decisions).

note at the outset that, for reasons discussed below, the following facts were gathered by this Court based on its thorough review of the record presented.

¶ 4    The parties were married in August 2013 and have three minor children.  In 2014, during the marriage, the parties purchased the three properties at issue, all of which are located in Chicago: 6121 South Champlain Avenue, Unit 1 (the Champlain property); 1456 East 69th Place (the 69th Place property); and 8747 South Burley Avenue (the Burley property).  Title for each of the properties was in both parties' names.

¶ 5    The parties later separated, and in 2016, appellant, who has been represented by various counsels throughout this matter and is currently represented on appeal, filed a petition for dissolution of marriage.  She also filed a separate petition for allocation of parental responsibility and parenting time.  Briefly, the matter proceeded over many years, during which time the parties each sought several orders of protection, emergency orders of protection, and no-contact orders against the other, asserting multiple allegations of theft, aggression, harassment, intimidation, murder-for-hire, and different forms of abuse (including sexual abuse) involving the parties and their children.  The litigation became severely contentious and involved local police, the Department of Children and Family Services, and the Federal Bureau of Investigations.

¶ 6    Tangentially, but pertinent to this appeal, a guardian *ad litem* (GAL) was eventually appointed for the children and, as is customary, the parties were ordered by the trial court to pay the GAL's fees, as apportioned by the court.  Appellant, however, failed to pay her share

of the GAL's fees.[2] She did not do so for a considerable amount of time and, eventually, the GAL petitioned the court for payment. In response, appellant moved to have the GAL discharged, alleging that the GAL's suggestions of limiting her parenting time were inappropriate, that the GAL's reports to the court were untruthful, and that the GAL was biased against her and purposefully stalling the divorce proceedings. In addition to removal, appellant demanded the trial court order the GAL to reimburse her for costs, impose sanctions on the GAL, and admonish the GAL and restrict her certification. The trial court denied appellant's motion. In addition, the court ordered that the 69th Place property was to be listed for sale within 21 days, with the parties' counsels selecting a realtor to facilitate the sale. It further ordered that proceeds from the sale were to "be used to pay the entire outstanding balance owed to the GAL," that the parties were to continue paying their previously-ordered monthly payments to the GAL until the sale of the property was complete, and that any proceeds remaining from the sale were to be held in escrow.

¶ 7    Apparently, the 69th Place property was not immediately sold, as the record next shows that in October 2019, the trial court ordered the parties to update their personal financial affidavits and to have market value analyses performed on each of the three properties for the purpose of selling one of them to satisfy the GAL's fees. Presumably based on its review of these, the court next entered an order redirecting the parties to sell the Champlain Avenue property (rather than the 69th Place property), appointing a realtor, and ordering the parties to

---

[2] For the record, it appears that appellee was also, at least at some point, in arrears in his payments owed to the GAL. However, not much else is included in the record concerning appellee's payment status and, as his portion of payment is not relevant here, we do not comment further in this regard.

cooperate and sell that property as soon as possible. However, in November 2019, rather than selling the Champlain Avenue property, it appears that appellant *sua sponte* leased it to a tenant. In light of this, the trial court ordered the parties to serve as co-lessors of the property and to open a joint escrow account. The court further ordered appellant to deposit therein any rents/monies already received as well as all future rent payments.

¶ 8 By June 2020, with none of the properties having been sold as ordered by the court and with appellant continuing to fail to pay her court-ordered monthly GAL fees, the GAL filed an "Emergency Petition for Temporary Restraining Order and Preliminary Injunction Restraining." In the motion, the GAL noted that appellant's tenant at the Champlain property was being evicted, appellant was being uncooperative with the eviction process, and appellant's conduct was interfering with and delaying the sale of that property. Additionally, the GAL provided the court with records demonstrating that appellant had begun a GoFundMe campaign online which she specified was to hire additional counsel for her divorce and that she had already raised several thousands of dollars, yet was delinquent in her financial obligation to the GAL in an amount well over $10,000. Over the next months, the trial court entered orders requiring appellant to make partial lump sum payments and monthly payments to the GAL, in accordance with its prior orders. Appellant did not do so. Eventually, the court set a hearing date on all pending motions in the divorce proceedings.

¶ 9 On January 11, 2021, appellant filed an emergency motion to continue that date, and within a few days, a motion to voluntarily dismiss her petitions for dissolution and allocation. Thereafter, appellee moved to file a counter-petition for dissolution, and the GAL filed a Rule to Show Cause against appellant for her failure to abide by the court's payment orders.

¶ 10    While these motions were pending, appellant filed a *pro se* notice for "interlocutory appeal" in our Court from an order of the trial court entered on November 8, 2018. However, appellant's *pro se* brief never discussed that November 8, 2018 order cited in her notice of appeal. Instead, her brief challenged only a file-stamped unsigned document dated January 26, 2021 which she insisted was an "order," but which the record revealed was merely a proposed order that had been prepared by her own counsel taking open motions under advisement and seeking additional parenting time.[3] However, as this document was never prepared, signed, or entered by the trial court, this Court dismissed the appeal for lack of jurisdiction. See *In re Marriage of Villacampa*, 2021 IL App (1st) 210073-U.

¶ 11    Meanwhile, in the trial court, appellant withdrew her petition to voluntarily dismiss her petition for dissolution of marriage, filed a new petition for allocation of parental responsibilities, and filed myriad subpoenas. In the midst of this, the GAL filed another Petition for Rule to Show Cause. In a March 30, 2022 order, the trial court set a status hearing date and, "[b]y agreement of the parties," authorized the GAL to hire a listing agent for the Champlain property and prepare it for sale.

¶ 12    Again, no sale occurred and no monies were provided to the GAL. Accordingly, the GAL filed another Petition for Rule to Show Cause directed at appellant, and appellee filed his own Petition for Rule to Show Cause against appellant as well, asserting child support arrearages and unaccounted-for rents at the Champlain property.

¶ 13    On September 9, 2022, the trial court entered an order deeding both the Champlain property and the 69th Place property to the GAL. The order granted the GAL the power to

---

[3] Counsel who prepared that document on appellant's behalf was not appellant's current counsel.

hold the two properties in trust and gave the GAL "sole control over the properties," with the power to evict any tenants and list the properties for sale. Additionally, the order instructed that the GAL was to sell the properties at fair market value, with the proceeds to, first, satisfy all GAL fees; second, satisfy the considerable child support arrearages owed to appellee by appellant; and then, any remainder to be held in trust pending further court order. By February 2023, quitclaim deeds to the two properties were issued to the GAL, and the trial court eventually released the GAL from the cause.

¶ 14     Of import to the instant appeal, the record next demonstrates that the parties were asked to submit memoranda to the trial court regarding their "property, debts, division and proceeds" and proposed judgments for dissolution. In her memorandum, as prepared by her counsel,[4] appellant insisted that she had purchased the three properties utilizing her own premarital property (an inheritance) and debts (loans/mortgages), "*and [appellee] did not contribute to the purchase, or maintenance of said real estate*." (Emphasis in original.) She admitted, however, that the purchases took place during the marriage and that the titles were in both parties' names. In her proposed judgment, as prepared by her counsel, appellant alleged she was entitled to an award of the three marital properties and that they should be awarded to her as her "sole and separate property, free and clear of any claims by [appellee]." For his part, appellee sought, and received, an extension of time from the trial court to file his proposed judgment. The record does not contain anything further regarding a proposed judgment from appellee.

---

[4] Appellant's counsel in this appeal represented her at this point in the underlying litigation and prepared her proposed judgment, submitted to the trial court.

¶ 15        Eleven hearings were held between January and early August 2024. In May 2024, the trial court entered a "Parental Allocation Judgment: Parental Responsibilities and Parenting Plan," awarding appellee the majority of parenting time. Appellant, represented by current counsel, appealed, and we dismissed her appeal due to her failure to comply with Illinois Supreme Court Rules (Rules) 341 and 342 (Ill. S. Ct. R. 341(h) (eff. Oct. 1, 2020); Ill. S. Ct. R. 342 (eff. Oct. 1, 2019)), as her brief did not contain accurate and fairly-stated facts, any references to page numbers in the record, a proper appendix, or any relevant case law in support of her arguments. See *Villacampa v. Mungaho*, No. 1-24-1215 (April 21, 2025) (unpublished summary order filed pursuant to Illinois Supreme Court Rule 23(c)(4), (5), (6) (eff. Feb. 1, 2023)).

¶ 16        On November 1, 2024, the trial court entered a "Judgment for Dissolution of Marriage." In addition to terminating the marriage, this order incorporated the allocation judgment, barred the parties from receiving maintenance, and discussed the parties' financial responsibilities toward their children. Pertinent to this appeal, Article IV was entitled "**Distribution of Property**." At the outset, the court assigned each party his/her personal property. Then, beginning with section 4.5, the dissolution judgment stated, as follows:

> "**4.5    Real Property**
>
> **A.**    During their marriage, the parties acquired and maintained marital property, including but not limited to the following parcels of real estate: (a) [the 69th Place property]; (b) [the Burley property]; and (c) [the Champlain property].
>
> **B.**    The above-mentioned marital real estate carries substantial debt.

  **C.**  Additionally, pursuant to Order of Court entered September 9, 2022

  (hereinafter "the September 9, 2022 Order") [the 69th Place property] and [the

  Champlain property] were assigned to * * * the former Guardian Ad Litem in

  this matter by means of judicial deeds. The September 9, 2022[ Order]

  remains in full force and effect and is incorporated herein as set forth

  verbatim."

Subsection 4.5D. stated that "[p]ursuant to and in accordance with the September 9, 2022

Order," proceeds from the sale of the 69th Place property and the Champlain property were

to be applied first, to the GAL's remaining balance; then, to appellant's child support

arrearages owed to appellee; and finally, any remainder thereafter was to be divided between

the parties, 70% to appellant and 30% to appellee "based on the court's finding [appellant]

purchased the property, in part, with non-marital funds, made contributions to the

maintenance of the property, and is obligated to maintain the property in the future."

Subsection 4.5E. recognized that appellant was currently residing at the 69th Place property

and, thus, granted her exclusive possession of the same "subject to the rights of ownership

retained by [the GAL]" pursuant to the September 9, 2022 Order. With respect to the

Champlain property, subsection 4.5F. stated that "[u]ntil such time as [it] is sold," appellant

was to be responsible for its management and all costs associated with it and, were she to rent

it out in the meantime, she would be responsible for collecting rents, depositing them in a

segregated bank account, and providing an annual accounting to appellee. Finally,

subsection 4.5G. awarded the Burley property to appellant "as her sole and separate property,

9

free of any right, title, interest, expectancy, beneficial interest, or claim of" appellee. Ultimately, the trial court declared the dissolution judgment to be a final judgment.

¶ 17                                                     ANALYSIS

¶ 18        On appeal, appellant asserts three errors on the part of the trial court with respect to its distribution of the properties. She contends that the court abused its discretion in failing to properly consider statutory factors under section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (750 ILCS 5/503(d) (West 2024)); that the court erred by adopting appellee's "proposed order verbatim without independent analysis of the evidence;" and that the court erred by imposing a reporting requirement on her to appellee. For myriad reasons, there is no merit to any of these contentions.

¶ 19        First, and as an aside, we cannot ignore the improprieties of appellant's brief. As we have underscored herein, appellant is represented by counsel. This is the third time matters related to this divorce have appeared in this Court. While the first was before a different panel and was pursued by appellant *pro se*, the latter two—the instant appeal and appeal no. 1-24-1215 involving the allocation judgment—were both pursued by current counsel, almost simultaneously, and were before this panel. As noted, we dismissed appeal no. 1-24-1215 pursuant to Rules 341 and 342, as appellant's brief, submitted by her counsel, was severely deficient. It did not contain accurate and fairly-stated facts, any references to page numbers in the record, a proper appendix, or any relevant case law to support her arguments. See *Villacampa*, No. 1-24-1215, ¶¶ 12-14 (April 21, 2025) (unpublished summary order filed pursuant to Illinois Supreme Court Rule 23(c)(4), (5), (6) (eff. Feb. 1, 2023)). We further noted that counsel continuously misstated the date of the order appealed from and, instead of

providing record citations to the trial court's allocation order, cited a document counsel herself had prepared and submitted to the court advocating for an award of the marital property. However, not only was this document not a final order (as it was never signed or file-stamped by the trial court) but, also, it had nothing to do with the issues presented in that appeal. See *Villacampa*, No. 1-24-1215, ¶ 7 (April 21, 2025) (unpublished summary order filed pursuant to Illinois Supreme Court Rule 23(c)(4), (5), (6) (eff. Feb. 1, 2023)).

¶ 20    We find ourselves in the same situation here. The day after our decision in appeal no. 1-24-1215 was issued, counsel moved this Court in the instant appeal for leave to file a second amended brief.[5] She stated in her motion she was "seek[ing] to amend the brief a second time to ensure complete compliance" with Rules 341 and 342, "as well as to assist the Court in efficiently reviewing [appellant's] arguments." We granted her motion, afforded her time, and accepted her submission of a second amended brief.

¶ 21    However, counsel's second amended brief, to put it mildly, hardly complies with Rules 341 and 342, nor does it "assist" us in reviewing appellant's contentions, in form or substance. In a formative sense, the brief suffers many of the same technical infirmities present in the brief counsel filed in appeal no. 1-24-1215. The statement of facts is not accurately and fairly stated but, rather, contains extraordinary amounts of biased argument and commentary directed against appellee. None of these facilitate an understanding of the decision appealed from, which, as we noted earlier, left this Court to *sua sponte* scour the record to decipher what even occurred in this matter—particularly, appellant's continued

---

[5] We had granted a prior motion counsel presented seeking time to file a first amended brief, wherein she acknowledged she had not provided any record citations and stated she would do so via amendment.

failure to pay the GAL fees, the trial court's September 9, 2022 order deeding the properties to the GAL, and Article IV of the final judgment dealing with the properties, none of which counsel ever mentioned in her brief. Moreover, counsel does not discuss any of the 11 hearings held in this matter nor the evidence presented during them in any real detail. Furthermore, counsel again botches the date of the order appealed from. While she lists it properly in the notice of appeal as November 1, 2024, she claims at least twice in her brief that the court entered "thereafter" a "purported amended" dissolution judgment on November 12, 2024, and that it did so inappropriately, "without notice." However, there is no such order or amended order in the record dated November 12, 2024, and the trial court's dissolution judgment, which it specified was a final and appealable order in the cause, is clearly stamped November 1, 2024.

¶ 22        Substantively, while counsel does provide some citations to the record and caselaw in her fact and argument sections, there are severe problems with these. First, when citing the record on appeal, counsel repeats the same two groupings of page numbers as supportive of her facts and arguments. The first grouping is "(C1671-1678, R2-68, R454-465)." These usually all appear together, but sometimes appear in varying combinations. However, C1671-1678, or pages 1671-1678 of the common law record, are the pages of counsel's own memorandum she prepared upon the trial court's request that the parties submit memoranda regarding their "property, debts, division and proceeds." These pages are not accurate, fair or authoritative. Likewise, pages 2-68 of the record of proceedings comprise the entirety of the first of the 11 hearings held by the trial court, on January 10, 2024. Each page cited is four pages of hearing transcript, for a total of 139 pages, plus 31 pages of court reporter-prepared

index. Again, counsel never cites to a particular page therein (which, by the way, dealt with allocation of parenting time), nor to any witness testimony or comment/determination by the trial court. And, her citation to pages 454-465 of the report of proceedings is more of the same: these pages comprise the entirety of the last hearing in this matter, held in August 2024, for a total of 45 pages of hearing transcript without mention of a particular page, witness testimony, or comment by the court.

¶ 23    In the second grouping of citations, counsel repeatedly cites to "(A28-A44, C1729-31, C1739-46)," again together and in varying combinations, when she discusses the trial court's judgment for dissolution and appellee's proposed judgment submitted to the trial court. However, these record citations are not what she asserts. That is, "A28-A44" is the trial court's judgment for dissolution; however, counsel cites to a copy of it from the appendix of her brief and not to the decision as it appears in the record, which is improper. Additionally, common law record pages C1729-31 and C1739-46 do not comprise appellee's proposed judgment submitted to the trial court. Rather, they comprise counsel's *own* proposed judgment, and amended proposed judgment, respectively. As mentioned earlier, we have searched the record *ad infinitum* and cannot find appellee's proposed judgment submitted to the trial court anywhere therein, let alone on these pages appellant cites.

¶ 24    Appellant's counsel also provides inadequate caselaw citations in her brief. Numerically, she cites more cases in support of her standard of review and argument sections than she did in her prior brief filed in appeal no. 1-24-1215. However, she does not provide any valid pinpoint citations to any pages in those cases to support her contentions, with the exception of one case: *In re Marriage of Heroy*, 2017 IL 120205. Even then, only two of her many

citations to that case contain a pinpoint citation. Additionally, counsel repeatedly relies on and cites "*In re Marriage of Polsky*, 385 Ill. App. 3d 1066 (2008)" throughout her brief. Yet, we have searched Westlaw and cannot find such a case with that citation. Rather, the citation takes us to a random page within the case of *In re Nathan A.C.*, 385 Ill. App. 3d 1063 (2008).[6] Moreover, counsel cites and relies upon two unpublished Rule 23 decisions for black-letter divorce and property distribution law. This is most certainly improper. See Ill. S. Ct. R. 23(e) (eff. Feb. 1, 2023) (unpublished orders filed pursuant to Rule 23(b) or (c) can be cited for persuasive or precedential purposes only to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case doctrine); see also *Midwest Medical Records Ass'n, Inc. v. Brown*, 2018 IL App (1st) 163230, ¶ 29 (parties are restricted from citing unpublished orders of this court as binding authority); *People v. Matous*, 381 Ill. App. 3d 918, 921 (2008) (it is a plain violation of Rule 23 for counsel to cite to an unpublished order as precedential authority where counsel is not citing it in support of one of the purposes specified in the Rule).

¶ 25 This Court is " ' "not a depository in which the appellant may dump the burden of argument and research" ' " for her cause on appeal. See *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 38 (quoting *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23 (quoting *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986))). That is exactly what counsel has done here, now for a second time. Briefly, and as previously dictated in appeal no. 1-24-1215, compliance with the Rules is not an inconsequential matter. See *Rodriguez v. Sheriff's Merit Commission of Kane County*, 218 Ill. 2d 342, 353 (2006)

---

[6] There are multiple other cases that are not properly cited in counsel's brief, as well.

(quoting *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 494 (2002) (quoting *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995))); see *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8 (compliance with rules governing briefs on appeal is compulsory); accord *Ryan v. Katz*, 234 Ill. App. 3d 536, 537 (1992); see also *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57 (our supreme court rules are not merely advisory suggestions; rather, they are required to be followed). This includes Rules 341 and 342 governing the form and content of appellate briefs which, again, requires an accurately and fairly-written statement of facts, proper citation to the pages of record relied on, and proper citation to authorities supporting the arguments presented. See Ill. S. Ct. Rs. 341 (eff. Oct. 1, 2020), 342 (eff. Oct 1, 2019). In light of all the current violations, we have every right to strike counsel's brief and dismiss this appeal, as we did in appeal no. 1-24-1215. See *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12; see also *Petrik*, 2012 IL App (2d) 110495, ¶ 38 (citing *Kic*, 2011 IL App (1st) 100622, ¶ 23 (failure to follow Rules may result in forfeiture of consideration of issues on appeal)).

¶ 26    However, for the sake of finality in this underlying divorce, and because, despite the violations, we can make out the bare-bones of the contentions raised on appeal, we chose to address the issues presented. See *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14 (reviewing merits of the appeal despite numerous violations of Supreme Court Rules).

¶ 27    Appellant contends that the trial court abused its discretion in failing to award her sole possession of the three properties at issue, as she requested in her proposed judgment. She asserts that, in failing to award her those properties, the court did not consider the statutory

factors of section 503(d) of the IMDMA as required, improperly adopted appellee's proposed judgment verbatim without conducting independent analysis of the facts presented, and inappropriately created a "continuing post-dissolution entanglement" between the parties by imposing a financial reporting requirement on her. These contentions wholly miss the mark of what occurred in this cause as, once again, appellant's counsel has inexplicably provided argument that totally ignores the posture of this matter and the trial court's ultimate decision.

¶ 28    First, in its September 9, 2022 order, the trial court deeded the Champlain and 69th Place properties to the GAL. In that order, as contained in the record here, the court specified that the GAL was being awarded "sole control over the properties," so it could do what needed to be done to sell them and recoup the monies owed her for her services, which appellant had continuously refused to pay throughout the divorce litigation. By February 2023, the GAL received quitclaim deeds to the two properties and the court released her from the matter. Accordingly, at this point, the parties, including appellant, no longer had any right in these two properties. Appellant's counsel never once mentions the trial court's September 9, 2022 order in her brief on appeal.

¶ 29    Next, the record reveals that in issuing its November 1, 2022 final judgment, the trial court clearly incorporated its September 9, 2022 order deeding the Champlain and 69th Place properties to the GAL. That is unmistakable, and counsel likewise fails to ever mention this portion of the final judgment in her brief on appeal. As noted, Article IV of the final dissolution judgment is entitled "**Distribution of Property**" and specifies that it is a full and final adjudication of the marital property and estate rights and claims of each party. The first few sections of this article assign and award each party their own personal property currently

in his/her possession.[7] In section 4.5, the court acknowledges the three parcels of real property at issue and notes they were acquired and maintained as marital property, which appellant admits on appeal. Then, in subsection 4.5C., the court reiterates that its September 9, 2022 order assigned the Champlain and 69th Place properties to the GAL via judicial deeds, and that "[t]he September 9, 2022[ Order] remains in full force and effect and is incorporated herein as set forth verbatim."

¶ 30　　　Subsequently, subsection 4.5D. mandates that, again "[p]ursuant to and in accordance with the September 9, 2022 Order," upon the sale of the two properties, proceeds therefrom "shall first be applied toward the satisfaction of any remaining balance due" to the GAL, and thereafter, "[a]ny proceeds remaining after satisfaction of [the GAL]'s fees shall be applied toward any remaining child support arrearage due and owing from [appellant] to [appellee]." The court added the proviso that, "[i]n the event there is any money remaining from the sale of either property, the money shall be divided 70% to [appellant] and 30% to [appellee] based on the court's finding [appellant] purchased the property, in part, with non-marital funds, made contributions to the maintenance of the property, and is obligated to maintain the [properties] in the future."

¶ 31　　　Then, in subsections 4.5E. and F., the court discusses who would be responsible for the costs associated with the Champlain and 69th Place properties before they were sold. In subsection 4.5E., the court noted that, because appellant was currently residing at the 69th Place property, she would be responsible for all costs associated with it "subject to the rights of ownership retained by [the GAL]" until it was sold. In subsection 4.5F., the court

---

[7] Appellant does not raise any issue in that respect.

assigned responsibility for all costs associated with the Champlain property to appellant "[u]ntil such time" as it was sold, and were she to rent it out in the meantime, she would be responsible for providing appellee with an annual accounting of all costs, fees and rents collected.

¶ 32     Finally, section 4.5 ends with subsection G., wherein the court awarded the Burley property, the only one of the three that had not been deeded to the GAL, to appellant "as her sole and separate property, free of any right, title, interest, expectancy, beneficial interest, or claim of [appellee]."

¶ 33     In light of these clear provisions in the trial court's final judgment for dissolution, we hold that appellant's contentions on appeal are wholly meritless.

¶ 34     Contrary to appellant's first assertion, the trial court did not fail to consider the statutory factors of section 503(d) of the IMDMA in distributing these properties. This is because it did not need to consider the factors at all. It had already deeded the properties to the GAL via its September 9, 2022 order—an order appellant never challenged. Appellant had continuously failed to pay the GAL (and later, court-ordered child support to appellee) throughout the divorce proceedings. There were multiple rules to show cause filed by the GAL detailing this, and multiple orders issued by the court requiring appellant to provide the funds. She did not. This resulted in the September 9, 2022 order, and this order was referenced throughout the final dissolution judgment and specifically incorporated therein. Thus, the Champlain and 69th Place properties belonged to the GAL and not appellant at the time of the final judgment, and appellant was more than aware of this.

¶ 35        Even were this untrue, which it is not, and even if the record could somehow be refuted, which it cannot, we do not find any abuse of discretion here. That is, ultimately, decisions pertaining to the distribution of marital assets will not be disturbed absent an abuse of discretion and, while the IMDMA directs trial courts to consider all the statutory factors listed in section 503, they are not required to make specific findings with reference to each of the factors or include a written, serial, or separate explanation of each in their final judgments. See *In re Marriage of Walsh*, 109 Ill. App. 3d 171, 176 (1982); *In re Marriage of Lipsch*, 86 Ill. App. 3d 81, 83-84 (1980); accord *In re Marriage of Guntren*, 141 Ill. App. 3d 1, 5-6 (1986). Rather, trial courts have broad discretion in weighing all pertinent factors and devising distributions of the property at issue. See *In re Marriage of Demar*, 385 Ill. App. 3d 837, 853 (2008).

¶ 36        Again, appellant failed to pay her GAL fees (and later, child support) throughout this litigation, even when ordered by the trial court. Accordingly, the court deeded the Champlain and 69th Place properties to the GAL via the September 9, 2022 order so the GAL could sell them and recoup her fees. In section 4.5D. of the final dissolution judgment, the court specified that, once those properties were sold by the GAL, any remaining proceeds after satisfaction of the GAL's remaining fees (and after satisfaction of appellant's remaining child support obligations owed to appellee) would be divided between the parties, with appellant receiving 70% and appellee receiving 30%. Thus, the trial court clearly acknowledged and accepted appellant's continued assertions that, although these were marital properties, she had purchased them, at least in part, with her own nonmarital funds and made contributions to their maintenance. Additionally, in section 4.5G., the trial court

19

awarded the only property it had not awarded to the GAL, the Burley property, solely to appellant, even though, again, this had been purchased during the marriage and title was held by both parties.

¶ 37     We find no error here. Simply put, appellant was not entitled to the Champlain and 69th Place properties. They belonged to the GAL. In the event proceeds remained from their sale, the court apportioned them in a manner greatly favoring appellant: once the GAL's fees and appellant's child support owed to appellee were satisfied, she would receive 70%. The trial court did so, striking a balance between its recognition that appellant may have used nonmarital funds to purchase and maintain the properties, as she insisted, against the unchallenged reality that they had been purchased during the marriage and title had been held in both parties' names before deeded to the GAL. Additionally, the court also awarded appellant the Burley property, in whole. Without more from appellant demonstrating how this was an abuse of discretion on the part of the trial court or somehow against the IMDMA, we will not disturb this distribution.

¶ 38     Appellant next contends that the trial court "abdicated its judicial responsibility by adopting [appellee]'s proposed order verbatim without any independent analysis or consideration of the evidence presented." She also insists that even if the court did follow statutory guidelines in distributing the properties, "it did not follow them equitably, or judiciously" and, instead, is at fault for " 'rubber stamping' " proposed orders submitted by parties.

¶ 39     We are beyond perplexed. First, none of appellant's citations in her brief lead us to a copy of the proposed order appellee submitted to the trial court so that we can make any sort

of comparison between it and the final judgment for dissolution entered by the court—the entire crux of her argument here. Again, she cites only to the court's final judgment in the record, to her own prepared proposed order, to a portion of the report of proceedings encompassing one of the hearings, and to a portion of her appendix on appeal which is a copy of the court's final judgment. Additionally, upon our own review of the record, we have found therein only a motion filed by appellee asking the trial court for an extension of time to file his proposed order, but not the proposed order itself. As appellant has failed to provide appellee's proposed order to the court, we cannot even begin to entertain an argument that the trial court somehow disingenuously copied appellee's proposed order verbatim in entering its final judgment.

¶ 40     Moreover, we simply do not understand appellant's assertion that the court distributed the properties inequitably or non-judiciously, in light of the unmistakable facts presented. Again, appellant was not entitled to the Champlain and 69th Place properties, as they had been deeded to the GAL. Yet, the court did award her a majority 70% split of any remaining proceeds from their sale, to appellee's detriment, in recognition of money she had allegedly spent to buy and maintain them; and, it awarded her full title to the Burley property, to appellee's complete exclusion. Appellant has wholly ignored these details throughout this entire appeal and, as she cites nothing of substance from the record to support her contention here, we find it has no merit.

¶ 41     Finally, appellant contends that the trial court abused its discretion by imposing an annual financial reporting requirement on her "that unnecessarily perpetuate[s] the parties' relationship post-dissolution" in contravention of public policy that advocates for finality in

21

divorce proceedings. She claims that the court's decision should be final, but that this requirement has created an "entanglement" that is not in her "best interests," particularly because she is required to report financial information to appellee who, as she claims, has never made any contributions to the properties.

¶ 42     However, appellant provides no caselaw to support this contention. To the contrary, the majority of post-dissolution proceedings involve continued relations between the parties in some form or another, such as with maintenance awards, child support payments, or dividing or disposing of property the parties hold together. In the instant case, again, the three properties were purchased in both parties' names. As appellant admits, and despite any assertions to the contrary for which she has provided no proof, they were marital assets. As made clear in the final dissolution judgment, the court awarded her the Burley property. This left the Champlain and 69th Place properties, which had been deeded to the GAL, but had not yet been sold. Subsection 4.5E. gave appellant possession of the 69th Place property subject to the ownership interests of the GAL, as appellant was currently living there and the parties had used it as the marital home; because the court allowed appellant to continue to live there, it made her responsible for all costs associated with that property until its sale. Similarly, subsection 4.5F. made appellant responsible for all costs associated with the Champlain property until its sale. It added the proviso that, "[i]n the event" she were to rent out that property in the meantime, she would need to provide an accounting of rents collected to appellee, and she would be able to retain a 10% management fee from the rents collected. We fail to see how this is an abuse of discretion. Notably, appellant is seeking reversal of the trial court's judgment with the goal of receiving complete and sole control of the three

22

properties. As we have described, and in light of the facts presented, we have no basis to do that. Ultimately, if appellant does not want the "entanglement" of the annual reporting duty with appellee as to the Champlain property, she can very well choose not to rent it out (and thus not collect a management fee), thereby absolving her of that requirement. Apart from this, we find no abuse of discretion in the trial court's decision to impose a reporting requirement on a parcel of property in appellant's charge until its sale that was, undisputably, marital property held by both parties.

¶ 43                                    CONCLUSION

¶ 44         For all the foregoing reasons, we affirm the judgment of the trial court.

¶ 45         Affirmed.