In re the MARRIAGE OF Arthur B. HINER, III, Petitioner,

and

Joan Marie Hiner, Respondent.

No. 83SC274.

Supreme Court of Colorado, En Banc.

Dec. 16, 1985.

Rehearing Denied Jan. 13, 1986.

---

Lawrence Litvak, P.C., Lawrence Litvak, Denver, Irvin M. Kent, Aurora, for petitioner.

John D. Comer, Englewood, Raphael M. Solot, Denver, for respondent.

ROVIRA, Justice.

We granted certiorari to review the decision of the court of appeals affirming a 1981 decision of the Adams County District Court, *In re Marriage of Hiner,* 669 P.2d 135 (Colo.App.1983).[1] After determining that the husband had concealed marital assets when the marriage was dissolved in 1975, the trial court awarded the wife her former husband's one-half interest in the family home as partial payment. In offsetting the husband's equity in the home against the wife's share of the undisclosed assets, the trial court applied the home's 1975 appraised value rather than the 1981 appraised value. We affirm the court of appeals ruling that transfer of the husband's interest in the house was proper, but hold that, for the purpose of determining the husband's equity in the home, the trial court should have applied the 1981 appraised value.

## I.

On October 1, 1975, the Adams County District Court entered a decree dissolving the marriage between petitioner, Arthur Hiner, and respondent, Joan Hiner. Attached to the decree was a stipulation for permanent orders which had been agreed to by the parties and incorporated into the decree by the trial court. The stipulation contained the following pertinent provision:

14. FULL DISCLOSURE: The above and foregoing Agreement and Stipulation of the parties is made upon the assumption that each of the parties hereto has made a full, complete and total disclosure to the other of the nature and extent of all the assets and obligations of the parties. As to any asset of the parties to which no such full disclosure has been made by either of the parties, then this Agreement shall become null and void and the Court shall, upon such subsequent discovery of assets of either party, retain full jurisdiction to approximately divide such additional assets appropriately. Specifically, this Agreement shall have no binding effect whatsoever upon any property not disclosed by either party hereto one to the other and described herein.

The stipulation also stated that "[t]he parties shall be equal tenants in common for all of the properties" described in the agreement. Included among those properties was the parties' family home in Englewood, Colorado. The agreement gave respondent the right to sole possession of the family home and required the petitioner to pay one-half of the monthly mortgage payments, one-half of the insurance premiums, and one-half of any item of repair, replacement, or maintenance costing over $300.

In 1979, the respondent discovered that her husband had failed to disclose substantial marital assets at the time of the 1975 dissolution decree. She responded by filing a motion for modification of the court's 1975 permanent orders on October 23, 1979. She sought one-half of the value of the newly discovered assets held or to be received by petitioner. Respondent also requested that the court's permanent orders be modified to award her increased maintenance and that petitioner be ordered

---

**1.** The court of appeals reversed that part of the trial court's order requiring payment by petitioner to respondent of $3,966.71 representing an interest in certain shares of stock. Respondent did not file a cross-petition for certiorari concerning this issue.

to pay certain maintenance arrearages. At the time of the October motions, petitioner and respondent were already engaged in a dispute over maintenance and modification of the permanent orders on other grounds.

Respondent's motions were considered by the trial court in January 1980. At that hearing, petitioner confessed that certain assets had not been disclosed and that income from assets disclosed in the original stipulation had not been properly accounted for. He also admitted that he owed respondent her share of the undisclosed and unreported assets and that, pursuant to the original stipulation of the parties, the court could "make a determination at a later date with respect to how those assets can be divided." Petitioner's counsel then added that

> [W]e are willing to convey his equity in the home to her, but we feel that in doing so that—in order to again make an accurate determination of these assets there should be an appraisal made of the home to determine what the fair market value is to determine what equity Mr. Hiner has, and that these monies that he did not account to her for—that he plainly, clearly, undebatably owes to her—should be applied against what equity interest he has; that he should deed her the property, and that to the extent that the equity of the property is sufficient to satisfy his debt to her—by virtue of the items I have expressed to the Court this morning—to the extent they are insufficient, he should be required to pay the difference. However, to the extent that the equity exceeds the amount of the debt, he should be entitled to receive that equity and let Mrs. Hiner have the house. The same thing relates to the furniture within the house. This was also pursuant to the agreement, jointly divided.

With respect to the home and the undisclosed assets, the trial court stated that "to be entirely fair to everyone, I think we would have to have a current appraisal"

and ordered that an independent appraiser be selected by the parties to determine the value of the home, furniture, and various undisclosed assets, and an accounting be made of the unreported income petitioner had received from previously disclosed sources.

The trial court issued an order concerning maintenance and the petitioner's obligation to make mortgage payments, pay insurance premiums, and make home maintenance payments; denied petitioner's request to sell his interest in the family home; denied respondent's request to award her the family home; and denied respondent's motion to modify the permanent orders. However, it did not issue an express ruling with respect to the portion of the motion dealing with newly discovered assets.

In October 1980, respondent filed a "Motion for Division of Property and Reconsideration of Maintenance Arrearage." That motion contained appraisals of both the newly discovered assets, and the Englewood home and furniture. Respondent alleged that petitioner owed her $166,953.35 for the undisclosed assets and attorney fees. Respondent then calculated petitioner's equity in the Englewood home by taking one-half of the home's 1975 appraised value of $95,000 and subtracting from that figure one-half of the outstanding mortgage and one-half of the items of deferred maintenance. This amount, plus one-half the appraised value of the home furniture, was subtracted from the amount respondent alleged petitioner owed her to arrive at a claim of $153,415.85.

On June 10, 1981 and August 5, 1981, the trial court, following a hearing held in April 1981, issued orders addressing respondent's Motion for Division of Property.[2] The court made findings with respect to valuation of the newly discovered assets and determined that petitioner owed re-

---

**2.** The January 1980 hearing took place before Judge Abraham Bowling. The April 1981 hearing was held in front of Judge Philip Roan, who issued the June 10 and August 5, 1981, orders from which petitioner appeals.

spondent $65,279.19.[3] Although evidence was presented that, as of April 1981, the lowest appraised value of the Englewood home was $250,000, the trial court applied the 1975 appraised value of $95,000 and calculated petitioner's equity in the home by subtracting the $65,000 outstanding mortgage from the 1975 value and dividing the resulting amount in half. The trial court then subtracted this sum—petitioner's calculated $15,000 equity in the home—from the $65,279.19 owed and ordered petitioner to pay respondent $50,-279.19. The trial court then ordered petitioner to "convey his interest in and to the family residence located [in Englewood] to the [respondent]." Petitioner appealed these orders and the court of appeals affirmed.

## II.

■ Petitioner first contends that the court of appeals misinterpreted the full disclosure provision of the original stipulation and erred in allowing the trial court to "change distribution of a fully disclosed asset." In so arguing, he relies on section 14–10–122(1), 6 C.R.S. (1973), which states in pertinent part that "provisions as to property disposition may not be revoked or modified unless the court finds the existence of conditions that justify the reopening of the judgment."

Petitioner's contention rests on the assumption that the property disposition contained in the original decree was revoked or modified. Here, however, the original disposition of the Englewood home giving petitioner an undivided one-half interest as tenant in common was neither revoked nor modified. Rather, the trial court, using its retained jurisdiction to divide the additional undisclosed assets, as provided for in section 14 of the original stipulation of the parties, implemented a payment plan whereby petitioner would use his equity in

the home to settle his debt with respondent. *Cf. Jekot v. Jekot*, 32 Colo.App. 118, 507 P.2d 473 (1973) (public sale of property to implement agreement of parties was not a modification of the property settlement). Indeed, this method of payment was advanced by the petitioner at the January 1980 hearing. The retained jurisdiction provision gave the court jurisdiction to implement the distribution of the undisclosed assets and to order petitioner to convey his interest in the Englewood home to respondent in payment of the monies he admittedly owed. We therefore hold that, pursuant to the original stipulation, the trial court had jurisdiction to order petitioner to transfer his interest in the family home to respondent.

## III.

■ Petitioner also contends that the trial court erred in valuing the Englewood home as of 1975, the year of the original dissolution decree. He argues that the trial court should have valued the home at its 1981 appraised value. The court of appeals rejected this argument, stating that "the proceeding would not have been reopened save for [petitioner's] concealment of assets." 669 P.2d at 137. The court of appeals then stated that it was adopting the reasoning of the trial court and quoted the following portion of the trial court's June 1981 order:

> The court finds that insofar as possible, a valuation date of 1975 should be used for items of marital property inasmuch as that was the date of the Stipulation for Permanent Orders which both parties had reason to believe should have concluded this matter as of the date of the Decree of Dissolution.

669 P.2d at 137.

Section 14–10–113(5), 6 C.R.S. (1973), relating to the disposition of property, states

---

**3.** Neither party, at trial or on appeal, contested the trial court's authority to distribute the undisclosed or unreported assets. There is no evidence or stipulation in the record, however, which indicates that the the parties and the trial court at any time agreed that a denial of peti-

tioner's October 23 motion would only affect maintenance and not distribution of undisclosed assets. Despite this fact, petitioner does not assert here that the trial court's subsequent distribution of assets was invalid because of the January 29 denial of respondent's motion.

that "[f]or purposes of this section only, property shall be valued as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree." This section gives the trial court broad discretion in matters of property division. *In re Marriage of Faulkner*, 652 P.2d 572, 574 (Colo.1982). Here, the Englewood home was not given a specific value at the time of the decree. The parties instead were awarded interest as "equal tenants in common" in the property. Therefore, the trial court's discretion to apply valuation dates for the property division under section 14–10–113(5) was exercised at the time of the original decree. *Cf. In re Marriage of Weaver*, 39 Colo.App. 523, 526, 571 P.2d 307, 309 (1977) ("Generally, in making a division of property, the court must find the approximate current value of all property owned by the parties at the time of the marriage or at the time of the acquisition, if after marriage. However, where the court determines the percentage ownership each party has in the marital property, and that percentage is not an issue on appeal, the failure to make such findings of current value is not necessarily erroneous.") (citation omitted). Pursuant to section 14–10–122(1), 6 C.R.S. (1973), the original "valuation" of fifty percent equity ownership should not be disturbed "unless the court finds the existence of conditions that justify the reopening of a judgment."

Here, the property division with respect to the family home was not reopened pursuant to section 14–10–122(1). Indeed, section 14 of the original stipulation did not allow for a reopening of the property division with respect to totally disclosed and previously divided assets. Petitioner was simply ordered to utilize his previously divided interest in the family home to pay monies owed for the undisclosed assets. Absent reopening under section 14–10–122(1), the appreciation in value of each party's equity in the house realized *after* entry of the 1975 decree should not have been treated as part of a disposition of marital property under section 14–10–113, 6 C.R.S. (1973). Once divided in the original

decree, each party's equity interest in the home was akin to separate property. Thus, the general proposition that "[a]ny increase in the value of separate property experienced after dissolution of marriage is, by implication, necessarily separate," should have been applied in the case at bar. *In re Marriage of Campbell*, 43 Colo.App. 72, 73, 599 P.2d 275, 276 (1979).

Here, the variation between the 1975 and 1981 valuations of the Englewood home amounted to $155,000. By applying the 1975 valuation, the trial court in essence deprived petitioner of $77,500 in equity. Moreover, the 1975 valuation was used despite the trial court's comments at the January 1980 hearing that a current appraisal of the house should be obtained. We conclude that the trial court's application of the 1975 valuation date for purposes of determining petitioner's equity in the family home is unsupported by statute or case law and amounts to a confiscatory taking. We therefore reverse the judgment of the court of appeals on the issue of the valuation date and hold that the trial court, in determining the value of petitioner's transferred equity, should have applied the 1981 appraisal of the Englewood home.

Using both the district court's method of calculating petitioner's equity and the 1981 appraisal, we subtract the $65,000 outstanding mortgage from the $250,000 appraised value to yield a total equity of $185,000. We hold that one-half of that equity, $92,500, is the separate property of the petitioner. Since this amount exceeds the $65,279.19 petitioner owes to respondent, transfer of all of petitioner's equity in the Englewood home would result in an overpayment of $27,220.81. We therefore remand this case to the trial court for determination of a method, consistent with this opinion, for the distribution of respondent's share of the undisclosed marital property that will not result in an overpayment to respondent.

The judgment of the court of appeals is affirmed in part and reversed in part and the case remanded to the court of appeals for remand to the district court for disposi-

tion consistent with the views expressed herein.