25CA1591 Marriage of Hass 06-11-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1591
Elbert County District Court No. 22DR30009
Honorable Theresa Slade, Judge

---

In re the Marriage of

Ashlynn Hass,

Appellee,

and

Zachary Hass,

Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE MOULTRIE
Grove and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 11, 2026

---

Griffiths Law, PC, Duncan Griffiths, Kimberly Newton, Lone Tree, Colorado, for
Appellee

Todd Collins & Associates, LLC, Todd Collins, Marc B. Tull, Elizabeth,
Colorado, for Appellant

¶ 1      Zachary Hass (husband) appeals various portions of the district court's permanent orders entered in the dissolution of his marriage to Ashlynn Hass (wife). We reverse the court's property division and retroactive child support order and remand for the district court to reconsider both. In all other respects, we affirm.

## I.     Background

¶ 2      Husband and wife were married in August 2017 and had a child together about four years later. Husband's family owns a ranch where both parties lived and worked throughout the marriage. Before the marriage, and as relevant here, husband acquired fractional interests in multiple parcels of real property that were part of the ranch. The parties separated in January 2022, and wife filed a petition for dissolution of marriage shortly thereafter.

¶ 3      A couple months after wife filed the petition, the parties filed a joint motion asking the court to determine temporary parenting time, maintenance, and child support. The court held a hearing where it discussed with the parties that under the maintenance and child support guidelines, husband should pay wife $2,026 for maintenance and $410 for child support per month. After learning that wife had transferred over $60,000 from a joint account to an

individual account before filing for dissolution, the court said that it would allow wife to maintain access to those marital funds but wouldn't order husband to pay wife maintenance. The court thus ordered wife to make the marital funds in her individual account accessible to husband.

¶ 4 After asking each party how much they believed they needed for monthly expenses and discussing with the parties the estimated monthly costs for their child's ongoing healthcare needs,[1] the court authorized both parties to spend $2,200 a month in "discretionary spending" from their marital funds. That amount didn't include the child's healthcare expenses.

¶ 5 More than two years later, the court held a permanent orders hearing over the course of three days. The court heard testimony from the parties, husband's family, and the parties' respective experts regarding the interests in and value of the parties' property, which included three parcels of real property — referred to as A, C, and D. Wife's counsel offered her appraiser — Carissa Marler — as

---

[1] The child was born with several serious and complicated medical conditions, which have required ongoing surgeries and specialized medical care.

an expert witness in the area of residential and rural appraisals. Husband's counsel didn't object, and the court accepted Marler as a real estate appraisal expert.

¶ 6    Husband acquired a 50% interest in Property A during the marriage, after husband's father deeded the property to husband and his sister in 2019.  The court found that the parties agreed that husband's interest in Property A was marital, its marital value was $142,500, and its value should be allocated to husband.

¶ 7    For Property C, the court found that "[t]he parties seem to agree that [husband] has a 25% interest in this property."  The court found that Property C's value at the date of marriage was $265,000, and, at the time of the permanent orders hearing, the value was $450,000.  The increased value between the date of marriage and the hearing was thus $185,000.  The court then found that husband's "combined (separate and marital) interest value" was $112,500, with $66,250 as husband's separate property and $46,250 as marital property.

¶ 8    The parties lived on Property D throughout their marriage and considered it their marital home.  Husband and his father purchased this property in 2012 and both, along with husband's

stepmother, are listed as borrowers on the mortgage. The court found that Property D's value at the date of the marriage in 2017 was $849,938.80, the mortgage balance was $210,817, and the equity — which was husband's separate property — was $639,121.80. The court found that the property's value at the time of the hearing was $1,255,840, the mortgage balance was $156,655.40, and the total equity was $1,099,184.60. Using those figures, the court subtracted the 2017 equity amount of $639,121.80 from the total equity of $1,099,184.60 and concluded that the marital equity totaled $460,062.80.

¶ 9 When dividing the marital estate, the court concluded that it was allocating marital assets of $785,025 to husband and $43,709 to wife. The court further concluded that husband's separate and marital property totaled approximately $2,000,000, while wife had only $49,740. Because of this imbalance between the parties' assets, the court ordered husband to pay wife an equalization payment of $357,158. The court found that husband "ha[d] the ability to pay that payment immediately" but also noted that "much of [husband's] assets [were] tied to other individuals." Alternatively, the court allowed husband to pay wife in four installments of

$100,000 between May 2025 and December 2025, which increased the equalization payment total to $400,000. The court found this fair and equitable under the circumstances because it incentivized husband to pay wife early and mitigated losses that wife faced "by not being able to invest property that [was] rightfully hers."

¶ 10    The court ordered husband to pay wife $182 per month for child support. The court concluded that "[t]here were no orders in place regarding child support" during the pendency of the case, so it ordered husband to pay wife $6,552 in retroactive child support.

¶ 11    Husband appeals the portions of the court's permanent orders related to its determination of the marital estate and its division thereof. Husband also appeals the court's order for retroactive child support.

## II.   Applicable Legal Principles

### A.   Marital Estate Division

¶ 12    A district court has great latitude in equitably dividing a marital estate in such proportions as it deems just. *See* § 14-10-113(1), C.R.S. 2025; *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28. "The key to an equitable distribution is fairness, not

mathematical precision." *In re Marriage of Gallo*, 752 P.2d 47, 55 (Colo. 1988).

¶ 13    Before dividing a marital estate, a court must determine whether an asset is marital or separate. § 14-10-113(1); *In re Marriage of Corak*, 2014 COA 147, ¶ 9. Marital property is subject to division and includes the appreciation of a spouse's separate property during the marriage. § 14-10-113(4); *see In re Marriage of Krejci*, 2013 COA 6, ¶ 13. The court must value marital property as of the date of the hearing on disposition of property. § 14-10-113(5); *see In re Marriage of Wright*, 2020 COA 11, ¶ 4.

¶ 14    A court can only distribute marital property that exists at the time of dissolution. *See In re Marriage of Lockwood*, 971 P.2d 264, 267 (Colo. App. 1998). And absent a finding that a spouse dissipated property in anticipation of the dissolution or engaged in conduct constituting economic fault, marital property disposed of before the permanent orders hearing may not be included in the marital estate. *See id.*; *see also In re Marriage of Smith*, 2024 COA 95, ¶ 75 (defining dissipation as "when one spouse depletes the marital estate for an improper or illegitimate purpose in contemplation of the dissolution"). If marital assets have been

6

dissipated by one of the parties, then the assets must be valued as of the last date they existed. *Martinez v. Gutierrez-Martinez*, 77 P.3d 827, 830 (Colo. App. 2003).

## B. Child Support

¶ 15 "A child has a legal right to support from both parents, and both parents have a continuing duty to provide reasonable support for the child." *In re Marriage of Salas*, 868 P.2d 1180, 1181 (Colo. App. 1994). The district court may order a parent to pay retroactive child support from the date of the filing of the petition for dissolution to the month before the support obligation begins. § 14-10-115(2)(a), C.R.S. 2025. However, "[a] [district] court's order must contain findings of fact and conclusions of law sufficiently explicit to give an appellate court a clear understanding of the basis of its order and to enable the appellate court to determine the grounds upon which it rendered its decision." *In re Marriage of Rozzi*, 190 P.3d 815, 822 (Colo. App. 2008).

## C. Standard of Review

¶ 16 "The district court's classification of property as marital or separate is a legal determination that is based on the court's factual findings." *Smith*, ¶ 42. We review de novo the court's application of

the law but defer to its factual findings unless they are clearly erroneous. *Id.* The court's valuation of property is binding on appellate review unless those findings are clearly erroneous. *In re Marriage of Nordahl*, 834 P.2d 838, 842 (Colo. App. 1992).

¶ 17 Absent a showing that the court abused its discretion, we won't disturb its equitable division of a marital estate, decision to accept an expert witness's testimony, or child support order. *See Medeiros*, ¶ 28 (abuse of discretion standard for dividing a marital estate); *Meier v. McCoy*, 119 P.3d 519, 521 (Colo. App. 2004) (abuse of discretion standard for qualifying expert testimony); *In re Marriage of Garrett*, 2018 COA 154, ¶ 8 (abuse of discretion standard for ordering child support). "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or a misapplication of the law." *Medeiros*, ¶ 28.

III. The Court Erred When It Divided the Marital Estate

¶ 18 As discussed below, we decline to consider husband's argument that the court erred when it accepted Marler's appraisal values, but we agree with him that the court made certain calculation errors regarding the marital estate. We further conclude

8

that the court's findings are insufficient to enable us to review husband's allegation that wife dissipated marital funds.

### A. Marler's Valuation Opinions

¶ 19 Husband argues that the court erred when it accepted Marler's valuation opinions related to the parcels in which he maintained varying fractional interests. He argues that, under *People v. Shreck*, 22 P.3d 68, 70, 77 (Colo. 2001), Marler wasn't qualified to opine on "the impact of [his] fractional interest in her final value calculations."

¶ 20 However, husband waived this argument because his counsel failed to object when wife's counsel offered, and the court accepted, Marler as an expert in the field of residential and rural real estate appraisal. *See In re Estate of Musso*, 932 P.2d 853, 857 (Colo. App. 1997) (failing to object at trial to the issue raised on appeal is deemed a waiver and forecloses appellate review). And we reject his assertion that raising this argument in his post-trial motion preserved this issue. *See In re Marriage of McClure*, 2024 COA 70, ¶ 7 (appellate courts typically don't consider arguments raised for the first time in a post-trial motion). Because husband waived any argument about Marler's qualifications, we decline to address this

contention further.  *See In re Marriage of Wells*, 252 P.3d 1212, 1215 (Colo. App. 2011) (an appellate court won't address issues not presented in the district court).

### B.    Calculating the Marital Estate

#### 1.    Property A

¶ 21    Husband argues that it's undisputed that he and his sister each acquired a 50% interest in Property A when they were minors and that husband's father transferred to them their respective interests in 2019.  Husband thus argues that the court should have deducted Property A's premarital value from its total value because the premarital value was his separate property.  However, husband conceded in the joint trial management certificate, his sworn financial statements, his proposed marital estate division spreadsheet, and his trial testimony that his 50% interest in Property A was marital.  Because husband conceded that the entirety of his interest in Property A was marital, we deem his argument waived and decline to further consider it.  *See In re Marriage of Huff*, 834 P.2d 244, 254 (Colo. 1992) (holding that a spouse who submitted financial affidavits treating particular

10

property as marital couldn't then question on appeal the district court's classification of the property as marital).

### 2.    Property C

¶ 22    Husband argues, and wife concedes, that the determination of Property C's marital value in the court's written order is different than the determination of value the court included in the marital property division spreadsheet attached to the order.  While wife argues that the error is merely clerical, husband argues it resulted in a 9.5% overstatement of the marital value of the property. Specifically, the written order states that Property C's marital value is $46,250, while the spreadsheet says its value is $118,750.  Thus, the court attributed $72,500 more to Property C's marital value in the spreadsheet than it did in its written order.

¶ 23    Wife argues that we should still affirm the court's $357,158 equalization payment because any error was harmless.  Wife argues that the court's detailed findings "reflect its true intent" because husband received over $2,000,000 in total assets.

¶ 24    A court's error that affects only a small percentage of the overall marital estate may be considered harmless.  *In re Marriage of Balanson*, 25 P.3d 28, 36 (Colo. 2001).  Given the overall value of

the parties' marital property, viewed alone, an error of $72,500 could be considered harmless. However, when we consider the court's miscalculation of the value of Property C, along with its other miscalculations — including its miscalculation of the value of Property D, which we discuss next — we can't conclude this error was harmless.[2] *See id.* ("[I]f the [district] court's errors in a particular case, viewed in the aggregate, affect a large percentage of the marital estate, a remand of the case to the [district] court to correct such errors is required.").

### 3. Property D

¶ 25 Husband argues that the court erred when, in calculating the value of his separate and marital property interests in Property D, it failed to subtract his father's 50% ownership interest (1) from the property's total value before deducting the mortgage from

---

[2] The court's written order repeatedly referenced the spreadsheet to determine the value of husband's marital property and total assets. But despite making written findings that husband was entitled to certain marital property and responsible for certain marital debts, the court didn't include all the values of those assets and debts in its written calculation of the total value of his marital property. Put differently, there are additional discrepancies between the court's written calculations and its valuation of those assets on the spreadsheet attached to the order. We are unable to discern the basis for the discrepancies.

husband's remaining 50% interest, (2) after it determined the property's total equity. We disagree with his first contention but agree with his second.

¶ 26    Husband provides no authority to support his first contention, which contravenes how courts ordinarily calculate equity in real property. *See In re Marriage of Hiner*, 710 P.2d 488, 492 (Colo. 1985) (calculating equity by subtracting the outstanding mortgage from the appraised value). Accordingly, we reject his assertion that the court's method of calculating husband's premarital equity in Property D was erroneous.

¶ 27    However, we agree that the court erred by not accounting for husband's father's 50% interest in the property at all. Accepting the court's finding that the property was worth $849,938.80 at the date of marriage and subtracting the then-existing mortgage balance of $210,817 results in $639,121.80 in total premarital equity. Because husband has a 50% interest in Property D, we conclude that the court should have divided this number in half to value husband's separate property interest at $319,560.90.

¶ 28    Similarly, accepting the court's value at the date of the hearing as $1,255,840[3] and subtracting the mortgage balance of $156,655.40 results in $1,099,184.60 in total equity.  The court should have divided this number in half to determine husband's equity interest at the time of hearing, which was $549,592.30.  Subtracting the value of husband's separate interest ($319,560.90) from the value of his equity interest at the time of the hearing ($549,592.30) results in an appreciation of Property D's value in the amount of $230,031.40 as a marital asset.

¶ 29    Instead, the court neglected to account for husband's father's partial interest when it concluded that husband had $639,122 in separate interest and that the appreciation, which amounted to $460,062.80, was marital.  Additionally, the spreadsheet states that the marital value of Property D was $303,408.  Thus, in both the written order and the spreadsheet, the court overstated husband's

---

[3] Husband argues that, "Without any explanation, the district court adopted [wife's] unsupported opinion that [Property D] was worth $1,255,840.00.  This is more than [Marler's] opinion that its value for permanent orders was $1,250,000."  Husband then references Marler's valuation report in which she opined that Property D's value was $1,255,840 but said she rounded the number down to $1,250,000.  Thus, Marler's report supports wife's offered value of $1,255,840.

14

separate interest in Property D by $319,561.10. And the court overstated the marital equity on the spreadsheet by $73,376.60.

¶ 30    The court thus erred when it divided the marital estate based on the incorrect conclusion that the marital estate had $145,876.60[4] in additional assets and that husband maintained $319,561.10 in additional separate property. *See Balanson*, 25 P.3d at 36, 42.

C.    Dissipation of Marital Assets and Equalization Payment

¶ 31    Next, husband argues that wife dissipated marital funds and that the court erred by failing to consider such dissipation when it divided the marital estate and calculated child support. The court identified in the beginning of its written order that "potential dissipation of bank accounts and marital funds" was a disputed issue. However, the court didn't make any findings of fact or conclusions of law regarding dissipation.

¶ 32    Whether a spouse dissipated marital property is a factual question. *Smith*, ¶ 76. A court may consider a spouse's dissipation of marital assets as economic fault when it divides the marital

---

[4] This includes the $72,500 overstatement from miscalculating the marital interest in Property C and $73,376.60 from Property D.

15

estate. *In re Marriage of Jorgenson*, 143 P.3d 1169, 1173 (Colo. App. 2006); *see also In re Marriage of Anderson*, 811 P.2d 419, 420-21 (Colo. App. 1990) (dissipation is a proper consideration for property division). When a spouse raises dissipation for the court's consideration, it is incumbent on the other spouse who spent marital funds to establish they were used for proper expenses. *See Martinez*, 77 P.3d at 830.

¶ 33    Because the court didn't make any findings about whether wife dissipated marital assets or whether those assets, if any, were considered in the court's division of the marital estate, we can't tell whether the property division is equitable. *See Rozzi*, 190 P.3d at 822. The court on remand should make specific findings regarding whether wife used marital assets for an illegitimate purpose. *See In re Marriage of Finer*, 920 P.2d 325, 331 (Colo. App. 1996). Only if the court finds that wife's use of marital assets was improper should it consider the value of those assets in its property division orders. *See id.*

¶ 34    Because we are remanding the case to the district court to reconsider its division of the marital estate due to the miscalculations identified above and consideration of whether wife

dissipated assets, we need not address husband's argument that the court abused its discretion when it determined that he had the immediate ability to pay wife $357,158 for an equalization payment.[5] In remanding this case to the district court, we reject husband's apparent assertion that the district court doesn't have authority to order an equalization payment. In doing so, we specifically note that the district court has authority to effect an equitable division of the marital estate, which includes entering "a variety of orders to implement its decision." *In re Marriage of Payne*, 897 P.2d 888, 889 (Colo. App. 1995). Additionally, the court must consider the parties' economic circumstances at the time of the remand. *See In re Marriage of Wells*, 850 P.2d 694, 696 (Colo. 1993); § 14-10-113(1)(c).

---

[5] In his appellate briefing, husband's counsel cites two unpublished opinions from this court in support of his argument. Absent exceptions inapplicable here, this court's policy prohibits citations to our opinions that aren't selected for official publication. Colo. Jud. Branch, *Court of Appeals Policies*, *Policy Concerning Citation of Opinions Not Selected for Official Publication* (2026), https://perma.cc/ZQW2-H29D. We trust counsel will adhere to this policy in the future.

## IV. Retroactive Child Support

¶ 35    Husband argues that the court overlooked the May 2022 temporary orders when it found that "[t]here were no orders in place regarding child support while this case was pending." In the temporary orders, the court ordered that "both parties may spend up to $2,200 a month of marital funds" from joint accounts. But the record sheds little light on whether this authorization was intended to cover temporary maintenance, child support, a combination of both, or neither. Husband argues that the court's failure to consider the impact of the $2,200 monthly authorization, along with wife's other "economic circumstances," amounted to clear error.

¶ 36    Because the court didn't clarify the intent of the temporary orders in the permanent orders, it's unclear whether it considered the order authorizing each party to spend $2,200 per month during the pendency of the proceedings when it ordered retroactive child support. *See Rozzi*, 190 P.3d at 822. Thus, the court's findings are insufficient for us to determine whether the court erred in determining the amount of retroactive child support.

¶ 37    That said, our conclusion that the court's findings were insufficient shouldn't be construed as a conclusion that the $2,200 monthly amount *was* child support.  Indeed, as we have already noted, at the temporary orders hearing, the court didn't make clear the purpose of its $2,200 per month authorization.  Accordingly, on remand, the court should determine the nature of the $2,200 monthly amount before recalculating the amount of retroactive child support owed, if any.

### V.    Husband's Request for Appellate Costs, and Wife's Request for Attorney Fees

¶ 38    Husband requests that we award him appellate costs under C.A.R. 39(a)(3).[6]  Wife requests that we award her attorney fees under C.A.R. 38, C.A.R. 39.1, and section 14-10-119, C.R.S. 2025.  Wife argues that the "court's findings extensively illustrate a substantial economic disparity between the parties" and that husband has the means to continue to pay for legal fees because of his family's assistance, while she is not similarly situated.

---

[6] The header in husband's opening brief states "COSTS AND ATTORNEY FEES," but he only requests costs, so we need not consider whether to award him any attorney fees.  *See* C.A.R. 39.1 (a party claiming attorney fees must explain the legal and factual basis for an award).

¶ 39　　Under C.A.R. 38(b), if we determine an appeal is frivolous, we may award sanctions, which includes attorney fees, to the appellee. C.A.R. 39(a)(4) taxes appellate costs "only as ordered by the [district] court."  Under C.A.R. 39.1, it's within our discretion to determine a party's "entitlement to and the amount of an award of attorney fees" for an appeal, or we "may remand those determinations to the lower court."  And section 14-10-119 authorizes a court to award attorney fees in dissolution proceedings after considering the financial resources of both parties.

¶ 40　　Because we affirm in part and reverse in part, we remand to the district court the determination of husband's appellate costs under C.A.R. 39(a)(4) and reject wife's assertion that his appeal was frivolous.  We thus deny wife's request for sanctions under C.A.R. 38(b).

¶ 41　　Regarding wife's request for attorney fees under section 14-10-119, the district court is better equipped to determine whether wife is entitled to attorney fees because it must consider the factual issues regarding the parties' financial resources at the time of the remand proceedings.  *See In re Marriage of Boettcher*, 2018 COA 34, ¶ 34 ("Section 14-10-119 empowers the [district]

court to apportion costs and fees equitably between parties based on their relative ability to pay."), *aff'd*, 2019 CO 81.

## VI. Disposition

¶ 42 The portions of the judgment addressing the separate and marital values of Properties C and D, dissipation, and retroactive child support are reversed. In all other respects, the judgment is affirmed. The court must also reevaluate maintenance and child support based on the court's reconsideration of the property division and the parties' current financial circumstances. *See In re Marriage of de Koning*, 2016 CO 2, ¶ 26 (maintenance); *In re Parental Responsibilities Concerning M.G.C.-G.*, 228 P.3d 271, 273 (Colo. App. 2010) (child support). On remand, the court may exercise its discretion to determine whether additional proceedings or an evidentiary hearing is necessary. *In re Marriage of Pawelec*, 2024 COA 107, ¶ 85.

JUDGE GROVE and JUDGE GOMEZ concur.